## GINN v. LINN.

In so far as election to a county office is evidenced by the returns merely, a commission issued by the governor is made final by section 60 of the code, where no hearing has been sought before the governor prior to the commission being issued. And this is so whether the returns sent up be complete or incomplete.

May 13, 1889.

Elections. Officers. Governor. Before Judge MILNER. Bartow county. At chambers, March 4, 1889.

On February 23, 1889, W. W. Ginn filed his petition in which he made the following allegations : On January 2, 1889, he was and still is a citizen and tax-payer of Bartow county, and as such is interested in the office of tax-collector thereof. On said 2d day of January, there was held in said county an election for county

officers, including the office of tax-collector. Petitioner
was then and still is·eligible to said office, and was a
candidate therefor, and J. F. Linn, J. L. Milhollin,
Joseph Shaw and F. M. Dillinger were also candidates.
The election was, in all respects, properly held, and
there were 2,288 ballots cast for tax-collector by legally
qualified voters; of said number, petitioner received
885, Linn 827, and the others a much smaller number
of votes.   By a plurality of 58 votes, petitioner became
the duly elected tax-collector of the county and enti-
tled to exercise the duties of said office.   All of this
will fully appear by reference to the precinct returns,
list of voters and tally-sheets of the election of file in
the office of·the clerk of the superior court, accurate
and examined copies of which precinct returns are an-
nexed to the petition.   A tabulated statement of the
precinct returns, giving the vote in detail for each of
the candidates at each election precinct, is set forth in
the petition.   On the day of the election, petitioner was
at the court-house, and conflicting reports were received
from some of the election precincts, and the result of
the election was in doubt until the official returns could
come in.   On the next day, the day on which the su-
perintendents of election were required by law to
convene at the court-house, they or some of them
did convene to consolidate the vote, and petitioner,
believing them to be honest, upright, careful and
capable men, did not inspect the precinct returns or
verify in any way the consolidation thereof, and was
not present but a few minutes while it was going
on.   After the attempted and pretended consolidation,
as hereinafter stated, he was informed that upon
consolidation he had received only 815 votes and
Linn had received 827, and the vote of the county
was so consolidated, and a certificate of that purport
was made out and signed by some of the superintend-

ents, and as petitioner then supposed and believed, by all who were required by law so to do; one copy of which was filed with the clerk of the superior court, and duplicates thereof were forwarded to the secretary of State. An accurate and examined copy of the pretended consolidated returns is annexed to the petition. Said certificate or consolidated return is illegal, null and void, because elections on that day were holden at two election precincts of the county, naming them, and the managers of the election at these precincts, naming them, did not, nor did either of them, sign said certificate or consolidated return, which was contrary to the requirements of law. On said 3d day of January, said pretended certificate with one list of voters, one tally-sheet and one precinct return from each precinct, except one, as is hereinafter set forth, were transmitted to the secretary of State and opened by him, but were never transmitted to or laid before the governor, and were never in any way examined by the governor; but on January 5, 1889, the secretary of State prepared and transmitted to the governor a written communication, of which a copy is set forth in the petition, and in which he reports to the governor for commission, "as per the election returns received and on file in this office," J. F. Linn, as tax-collector of Bartow county. Upon which certificate the governor, on January 7, 1889, the intervening day being Sunday, issued commission to said Linn as tax-collector and also his *dedimus potestatem* to the ordinary of Bartow county, before whom, on January 14, 1889, Linn appeared and qualified as tax-collector, and is now in possession of the office, exercising its powers and receiving its emoluments. The secretary of State, before transmitting the said communication to the governor, did not examine the said returns or any of them except the pretended certificate or consolidated return, and made up the report from

the face thereof, and petitioner is informed and believes that in this respect, and in respect to his report to the governor and issuance of commission thereupon without an examination of the returns by the governor to the secretary of State, he followed what has always been the usage and custom of his office since election returns were required to be made to him, except in case of a contested election. As petitioner relied upon (as above stated) the integrity, etc. of the superintendents of election, and had no reason to and did not suspect that they had or would fraudulently or negligently miscount the vote or make an untrue or illegal certificate thereof, when he was given the information above detailed as to the result of the pretended consolidation, and that the same had been certified, he believed he was beaten for the office and continued so to believe until after the commission had issued to Linn, and took no steps to contest the election before the governor. In fact, he did not suspect otherwise until, on January 10, 1889, there appeared in a newspaper what appeared to be a statement of the vote of the county by precincts, from which it appeared that petitioner had only received twenty-nine votes at the precinct at Euharlee in the 851 district G. M., and as he had expected a greater vote there, he made inquiry, and being told that he received ninety-nine votes there, he then at once, and for the first time, sought aid of counsel and had the election returns inspected, and thereby has discovered that he had in fact received fifty-eight votes more than Linn, and first learned of the fact that said pretended certificate had not been signed and consolidated return made up, by at least one superintendent from each precinct in the county. Petitioner shows, on information and belief, that the certificate or consolidated return transmitted to the secretary of State was not accompanied by the oath of the magistrate or superintendent, one precinct

return, list of voters and tally-sheet from each of said precincts as required by law, but that said return contained no tally-sheet from the Taylorsville precinct, where petitioner got ninety-two and Linn forty-eight votes; and contained no oath of the superintendent, precinct return or list of voters from the Iron Hill precinct, where petitioner received forty-two and Linn twelve votes; and no oath of superintendent, precinct return, list of voters or tally-sheet from the Euharlee precinct, where petitioner got ninety-nine and Linn forty-eight votes. So that if the secretary of State or governor had looked into said returns and undertaken to verify the certificate or consolidated return by an inspection of the several precinct returns, it would have been impossible; whereas, if all the returns, tally-sheets and lists required by law had been transmitted, an inspection thereof would have clearly shown that the petitioner had a plurality of fifty-eight votes, notwithstanding said consolidated return. On account of confidence in the superintendents, as hereinbefore set forth, petitioner believed, until after the commission had issued to Linn and he had qualified and taken possession of the office, that all the precinct returns, tally-sheets and lists of voters had been duly transmitted to the secretary of State with the consolidated returns, and did not learn that it had not been done until February 22, 1889, when he was so informed by his counsel, etc. Petitioner prays that Linn be required to show cause why petitioner should not have leave to, and why the solicitor-general should not upon the relation of petitioner, file an information in the nature of *quo warranto* to inquire by what authority Linn exercises the office of tax-collector; and that petitioner, upon the hearing of said rule, may have leave to file an information and thereupon may have judgment establishing his right to the office, and judgment of ouster against said Linn, and that such judgment may be certified to the governor; etc.

Accompanying the petition is the affidavit of petitioner's counsel, in substance as follows: The precinct returns and oath of the superintendents annexed to the affidavit are true copies of the original returns filed in the office of the clerk, except the precinct return from Alatoona, which is a copy of the original return on file in the office of the secretary of State; a copy of the consolidated return annexed is a true copy of the consolidated return on file in the office of the secretary of State; the communication from the secretary of State to the governor set forth in the petition is a true copy from the original on file in the governor's office. Affiant applied to the secretary of State for the election returns, and was furnished with a package purporting to contain them, and he carefully examined it, and it did not contain a tally-sheet from the Taylorsville precinct, no oath of superintendent, precinct return or list of voters from the Iron Hill precinct, and no oath of superintendent, precinct return, list of voters or tally-sheet from the Euharlee precinct. He made diligent inquiry of the secretary of State and his clerk, and was informed that said package contained all the papers relating to the election on file in said office, and that no such papers as those above described were on file there. He applied to the clerk of the superior court for the election returns, and found among them, and there are now on file in his office, two copies of the oath of the superintendent, precinct return, list of voters and tally-sheet of the said election at Euharlee; and he informed his client of this fact on February 22, 1889. Attached to the petition and affidavit are copies of the oath of superintendents and precinct returns of the several districts of Bartow county.

To this petition, Linn demurred on the following grounds:

(1) Because the information related and sought to be filed or the facts shown thereby, do not make a case where a court of law or equity has or assumes the power of decision. All the facts, etc. set forth fall within the exclusive jurisdiction, power, province and duty of the governor prior to the issuing of the commission; after commission is issued, no court or judicial officer has any power to inquire into the same for the causes related or for like causes.

(2) Because the relator does not show that he is entitled to the office of tax-collector.

(3–4) Because he shows no sufficient reason why he did not file the usual contest before the governor within the time required by law, and shows no diligence whatever in trying to procure the facts he has now set up, but on the contrary, his petition shows that the facts sought to be set up were all easy of access, and if true, were susceptible of proof, and that he had ample opportunity to be heard on a contest regularly filed before the governor.

(5) Because the petition shows that respondent is holding the office, etc. under commission issued by the governor, and that respondent has not wrongfully usurped the office.

(6–7) Because nothing is alleged that in any way connects respondent with omissions, wrongs or irregularities complained of; but from the allegations of the petition it appears that the respondent had no connection therewith.

(8–9) Because no reason is shown why petitioner or the State in his behalf should be allowed to go behind the commission, and because petitioner is estopped by the commission from inquiring into the vote cast or the result of the election, the commission being conclusive evidence or proof of such result.

The demurrer was sustained, and Ginn excepted.

E. D. Graham, for plaintiff.

Baker & Heyward and J. M. Neel, for defendant.

Bleckley, Chief Justice.

This is a contest over an office—the office of tax-collector of Bartow county. Apparently there is very little doubt that Ginn was elected and Linn defeated; but the commission issued to Linn; and as the matter in controversy relates to something that the governor was competent to decide upon the face of the returns, we think the case is controlled by *Corbitt* v. *McDaniel*, 77 *Ga*. 544. Here, it is true, the returns are alleged to have been incomplete, an important omission having been made in sending them up to the capital; but we are to regard the state of the returns as the governor acted upon them, and if parties interested in the election neglected to see that all of the precincts were included, and failed to discover the omission, if any, before the commission issued, we think the courts cannot aid them, as the code now stands. Perhaps this subject needs further legislation, but if so, the legislative department of the government will doubtless discover in due time what amendment ought to be made. We think that without some amendment, the courts cannot reverse or evade the decision of the executive department upon the fact of election as shown by the returns, and the executive commission founded thereon.

*Judgment affirmed.*