## CUTTS v. SCANDRETT.

1. This court will not dismiss a writ of error merely because the bill of exceptions complains not only of rulings made by the judge before whom the case was finally tried, but also of interlocutory rulings made by another judge at prior stage of the proceeding. Such bill of exceptions, however, does not bring under review by this court the rulings last mentioned.

2. Section 111 of the Political Code provides the exclusive remedy by which a person claiming that he was elected to a municipal office can contest the question whether a rival candidate, who has been duly declared elected thereto, was lawfully elected; and where a candidate who was not declared elected failed to resort to this remedy, or after resorting to the same did not obtain a judgment declaring that he was elected and entitled to the office, he can not, in his character and right as a defeated candidate, institute a quo warranto proceeding for the purpose of ousting the incumbent and having himself installed in the office.

3. When in its consideration of a case this court discovers from the record that a judgment has been rendered by a court having no jurisdiction of the subject-matter, that judgment will be reversed, although the record discloses that at an interlocutory stage of the case a ruling to the effect that the court below did have such jurisdiction was made by a judge to whom the plaintiff's petition had been presented for preliminary action, and although this judgment was never set aside or reversed, but was practically acquiesced in by the judge presiding at the final trial, who himself rendered a judgment of like kind.

Argued May 12, 13, — Decided August 2, 1899.

Quo warranto. Before Judge Butt. Dooly superior court. February term, 1898.

*E. D. Graham, W. A. Hawkins, E. J. Strozier,* and *Shipp & Sheppard,* for plaintiff in error. *F. A. Hooper, solicitor-general, Guerry & Hall, J. T. Hill, Pearson Ellis,* and *J. G. Jones,* contra.

LEWIS, J. On the 11th day of January, 1899, an election was held in the city of Cordele, Dooly county, for the offices of mayor and three aldermen of said city. There were two candidates for mayor and six candidates for alderman in said election. The candidates for mayor were William Scandrett and C. C. Cutts, the plaintiff in error. Cutts received a majority of the votes, and he was declared duly elected by the managers of the election. The three candidates for alderman receiving the highest number of votes were likewise declared elected by the managers. After this Scandrett and the three

defeated candidates for alderman instituted their proceedings
to contest the election before the ordinary of Dooly county, un-
der section 111 of the Political Code. That contest proceeded
to the extent of having the testimony taken before a magistrate
and returned to the ordinary, and on the hearing before the
ordinary he sustained a motion to dismiss the contest for want
of proper service or notice on the respondents. The contest-
ants were claiming the offices upon the ground that they re-
ceived the highest number of legal votes cast in the election,
claiming that the respondents received illegal votes sufficient
in number to reduce their apparent majority to a minority of
the legal ballots cast. After this proceeding was disposed of
by the ordinary, Scandrett presented his petition for leave to
file an information in the nature of a quo warranto, to Hon.
Z. A. Littlejohn, the judge of the superior courts of the circuit,
who thereupon declared himself disqualified to hear the case,
on account of the fact that he was related to one of the contest-
ants for the office of alderman, was a taxpayer residing in the
city, and was also related to officers who held their appoint-
ments under the mayor and aldermen and who were, therefore,
interested in the results of the contest. The petition was then
brought before Hon. W. H. Felton, judge of the superior courts
of the Macon circuit, on the 13th day of March, 1899. To this
application the respondent C. C. Cutts filed, before answering
the case, his demurrer to the petition, which was overruled by
Judge Felton; and he also filed his plea to the jurisdiction, on
the ground that under the facts stated by Judge Littlejohn he
was not disqualified, and that therefore the judge of the supe-
rior courts of the Macon circuit had no jurisdiction of the case;
which was likewise overruled. Respondent then filed his an-
swer, and the court passed an order allowing the information
to be filed as prayed for, and, there being an issue of fact
raised by the pleadings, granted an order setting the issue for
a hearing before the jury regularly empanelled for the Feb-
ruary term of Dooly superior court, on the 23d of March, 1899.
To this order respondent excepted. On the 27th of March, at
the February adjourned term of Dooly superior court, the case
was called for trial, Hon. W. B. Butt, judge of the Chattahoo-

chee circuit, presiding. Respondent then filed his motion to dismiss the case, which was overruled by the court, and he also filed a demurrer and a plea to the jurisdiction of the court, on the same grounds as taken before Judge Felton. It seems this demurrer and plea were filed to the petition brought by the solicitor-general in the name of the State; the latter petition being based on the same grounds as were embodied in the original petition filed by Scandrett. Both the demurrer and the plea were overruled by the court. The case then proceeded to trial on its merits, the petition claiming the office, in behalf of Scandrett, on practically the same grounds as were involved in the contest before the ordinary. The jury returned a verdict finding the issues in behalf of the plaintiff, and the judge rendered a judgment ousting respondent from the office. The respondent Cutts then made a motion for a new trial on various grounds, which was overruled by the court. He then brought his bill of exceptions, assigning error both upon the rulings of Judge Felton, overruling his demurrer and plea, and also upon the rulings of Judge Butt, overruling a similar demurrer and plea, and alleging error on the judgment overruling his motion for a new trial. When the case was called for trial in this court, a motion was made to dismiss the writ of error, on the ground that the errors complained of in the bill of exceptions consist of rulings made by two judges, to wit, W. H. Felton, judge of the superior courts of the Macon circuit, and W. B. Butt, judge of the superior courts of the Chattahoochee circuit. The motion contained the further grounds, that there was nothing in the record to give this court jurisdiction, that the rulings of the court were not certified in a proper manner, and that there were no proper parties to the bill of exceptions.

1. Under the decision of this court in the case of *Western & Atlantic Railroad* v. *State of Georgia*, 69 *Ga.* 524, a judgment overruling a demurrer to an application for the writ of quo warranto is not a disposition of the case from which a bill of exceptions can be taken directly to this court. Under that decision the proper method of assigning error upon rulings of the court in the progress of a trial of an application for quo

warranto is in the general bill of exceptions, filed after the case has been finally determined in the court below, whether the rulings complained of be made at the preliminary hearing of the petition for leave to file the information, or whether they be made during the final trial of the case. In the light of this decision, there is plausible reason for the contention by counsel for plaintiff in error, that the bill of exceptions in this case follows the plan indicated as the correct one in the case above cited, and that unless he can review by this method the rulings of Judge Felton made on the preliminary hearing of this case, the plaintiff in error would be without any remedy whatever to have reviewed before this court the alleged errors in said rulings. But we know of no rule of law giving this court the power to pass upon the correctness of any decision of a judge of the superior court, which has not been authenticated or verified by the certificate which the statute prescribes shall be signed by the judge whose rulings are complained of. There is no authority of law, where two judges have presided at different times in the trial of different branches of the same case, for this court to review the rulings of one under a bill of exceptions based upon the certificate of the other. It does not necessarily follow, however, from this that the party complaining of errors made by the presiding judge on a preliminary hearing in a quo warranto case is without any remedy to have such rulings reviewed by this court. In such a case we see no reason why exceptions pendente lite could not be filed and duly certified, as the law requires, by the judge whose decisions are excepted to, and after a final determination of the case, when the same is brought for review before this court under a general bill of exceptions, the errors assigned in the exceptions pendente lite could not be considered and passed upon by this court as is usual in all such cases. It is true that in the decision cited above it was held that it was not necessary for exceptions pendente lite to be filed, complaining of any rulings of the court that might be made during the progress of the trial of such a case. But the court nowhere in that decision intimates that a party has not the right to file such exceptions, and thus make them a part of the record, before the final termina-

tion of the cause. In that case there was but one judge who had presided below throughout the proceedings, and the court evidently did not contemplate applying the principle it decided to a case where the rulings of two judges, made at different times in the progress of the trial, were sought to be reviewed before this court. We do not think, therefore, that the principle announced by the court can be fairly applied to the facts in this case, especially as the application of such principle would be in violation of a special statute touching the jurisdiction of this court in passing upon assignments of error set forth in a bill of exceptions not certified by the judge whose rulings and decisions are complained of. But simply because the bill of exceptions in this case has embodied therein both the rulings of Judge Felton and those of Judge Butt, and assigns error on all, constitutes no reason why the bill of exceptions should be dismissed, and why this court has not jurisdiction to hear and determine such assignments of error in the bill of exceptions as relate only to the rulings of Judge Butt on the final hearing of the case. The bill of exceptions in this case specifically sets forth several decisions made by Judge Felton during the preliminary trial before him, and also the rulings of Judge Butt upon the final hearing of the case. While we can not consider the alleged errors committed by the former, for the reason that no proper exception has been taken thereto, yet this furnishes no reason whatever why this court should not consider other questions raised by the bill of exceptions, upon which error has been duly assigned, and a verification of which has been duly made by the certificate of the judge as prescribed by law. There are numerous grounds of error presented by the bill of exceptions and the record, which relate to various rulings of the court during the progress of the trial of the case on its merits, and which involve questions which were not and could not have been passed upon by Judge Felton on the preliminary hearing. It has often occurred in the trial of cases before the Supreme Court that a bill of exceptions presented a question which could not be considered by the court, for a want of a proper assignment of error thereon, or for a failure to except thereto in the manner prescribed by law; and

yet we are not aware that this court, on that account merely, ever dismissed a writ of error and refused to hear and determine such other questions as were properly made by the bill of exceptions. We think it, therefore, proper in this case to treat the various recitals in the bill of exceptions touching the rulings of Judge Felton simply as a part of the history of the case, and, so far as concerns a consideration of other questions properly presented by the record, such recitals with reference to the action of the court had on the preliminary hearing may be regarded as mere surplusage.

2. One of the grounds in the demurrer to the petition filed by Scandrett and overruled by Judge Felton, and also one of the grounds in the demurrer to the petition filed by the solicitor-general and overruled by Judge Butt, was, that there was no authority of law authorizing an election contest in the State of Georgia by writ of quo warranto, and this proceeding is an attempt to contest an election by quo warranto. Section 4878 of the Civil Code declares that "The writ of quo warranto may issue to inquire into the right of any person to any public office the duties of which he is in fact discharging, but must be granted at the suit of some person either claiming the office or interested therein." Section 111 of the Political Code declares that, "Whenever any contest arises over an election of any constable, municipal officers, or other officers not hereinbefore provided for, the same shall be filed with, heard and determined by the ordinary of the county wherein such contest may arise, under the same rules and regulations as to the mode of procedure as prescribed in contests where commission is issued by the Governor." This section is simply a codification of the act of 1893. See Acts of 1893, pp. 124, 125. The controlling question in this case is, whether or not this act of 1893, passed by the legislature after the provisions on the subject of quo warranto, above quoted, had become a law of the State, provides an exclusive remedy for a contest over the election of municipal officers. The proceeding by quo warranto in this case was manifestly for the purpose of contesting a municipal election for the office of mayor, by seeking to go behind the returns of the managers of that election, with the view of

showing that a large number of votes counted for the successful candidate were cast by people some of whom were alleged to be disqualified from voting on account of being tax-defaulters, others on account of being non-residents, and others on account of having been convicted of crime.   These contests invariably involve an immense amount of testimony, often taking even weeks in the introduction of evidence.   The evident policy of the legislature in designating a specific tribunal for the purpose of trying a contested-election case, and especially for the purpose of investigating questions which would involve such an investigation of the ballot-box, was to save the time of the courts and the expense to the public, as well as delay to the litigants, which would almost necessarily follow all such contests instituted by regular proceedings in court.   But such a purpose could not be accomplished if the legislature, in establishing a special election court, intended merely to provide a remedy cumulative to the one which, before the passage of the act, might have been adopted at common law by writ of quo warranto.   Were it not for some special statutory provision, prescribing the manner in which an election should be contested, we would not question the right of the party claiming the office, as against one alleged to be holding the same illegally, to ask for a redress of his grievances by petition to the judge of the superior court for the writ of quo warranto.   But when a special statute has been enacted for the purpose of settling such contests in a given way before a tribunal established as an election court, and especially when such a statute by its words indicates that when any contest arises over an election the same *shall* be filed with, heard and determined by such a court, we think the manifest intention of the legislature was to render the statutory provision for the contest exclusive, and not merely cumulative.   This by no means renders inoperative the provision of our law allowing a claimant to the office to inquire into the title of one holding it by quo warranto proceedings.   Such a claimant still has a right, for instance, by this method to oust a mere usurper, or to inquire into the eligibility of the office-holder, or the power of one appointing him to the office, and in fact to attack his title for any reason save that which involves

a contest of the election.　Nor does this view necessarily involve the right of the public or the people to institute proceedings, by quo warranto, for the purpose of contesting the issue as to whether or not an incumbent of an office has been legally elected.　Yet there is much authority for the position that where there is a special statute for contesting an election, the remedy thus provided is exclusive, and applies to the public as well as to an individual.

In the case of the State of Ohio v. Marlow, 15 Ohio St. 114, it was decided that "A specific mode of contesting elections in this State having been provided by statute, according to the requirement of the constitution, that mode alone can be resorted to, in exclusion of the common-law mode of inquiry by proceedings in quo warranto.　The statute which gives this special remedy, and prescribes the mode of its exercise, binds the State as well as individuals."　In Pennsylvania a provision by statute conferred upon a certain municipal council the power of inquiring into and determining whether or not there had been an undue election of certain officers.　In the case of Commonwealth v. Henszey, 81 Pa. St. 101, it was held that, in consequence of such a statutory provision, providing a specific means for contesting an election, the writ of quo warranto would not lie.　In the case of Commonwealth v. Garrigeus, 28 Pa. St. 9, 70 Am. Dec. 103, it was decided that the "mode prescribed by statute for inquiring into and determining regularity and legality of municipal election and the returns made thereof must be followed as provided, to the exclusion of the common-law mode of redress."　In Paine on Elections, § 860, it is declared : "When the statute creates a special tribunal and prescribes special proceedings for the trial of contested-election cases, and the tribunal to which jurisdiction is given is vested with full powers to adjudicate all questions involved in such cases, the courts will not take jurisdiction by quo warranto, at common law, even in case of fraud on part of the officers of election or candidates."　Mechem's Public Officers, § 215, declares that where special forms of procedure for the contest of an election have been provided by statute, the machinery so provided must, by individuals, and usually by the people,

be made use of in preference to the remedies afforded by the common law, and that the common-law remedy by an information in the nature of a quo warranto must be resorted to where no special remedy is provided.   The same view is held in High's Extraordinary Legal Remedies, § 617.   In § 617 (a) the author does recognize a conflict of authority as to the extent to which statutory remedies for contesting elections to public offices exclude the jurisdiction of the courts, by proceedings in quo warranto to determine the title to such offices, in cases of dispute between rival claimants.   On this subject he argues that "A proceeding in quo warranto is not an election contest between rival claimants of an office, but is rather a proceeding by the people in their sovereign capacity, the right to maintain which is not taken away or impaired by a statute granting to electors the right in their individual capacity to contest an election to a public office."   He concludes, therefore, that an information will lie in behalf of the people in such cases, but clearly indicates it would not lie in behalf of citizens or electors desiring to contest an election to a public office.   There is authority, in adjudications on this subject in a few other States of the Union, in conflict with the views entertained in the text-books and decisions above cited, but we do not think that even these authorities are necessarily in conflict with our views in this case ; for they all seem to recognize the fact that while the mere existence of a statutory remedy does not necessarily oust the courts of jurisdiction, by proceedings in quo warranto, in an election contest, yet if by the language of a special statutory provision the legislature clearly indicates its intent to make the remedy prescribed exclusive, and not merely cumulative, the courts will, of course, give effect to such intention.   We have already endeavored to show that a fair construction of the act of 1893 is, that the use of the imperative words, requiring that all such contests of elections relating to municipal and other officers *shall* be filed before the ordinary, manifested · an intention of the legislature to exclude every other remedy for such a contest; especially when the contest is made by a defeated candidate seeking to go behind the returns of an election and claiming that he is entitled to the office by virtue of having

received a majority of the legal votes cast.    This conclusion is entirely in accord with the views expressed by this court in *Davis* v. *City Council of Dawson*, 90 *Ga.* 817, in which it was held that a defeated candidate, in his character of citizen and taxpayer, might by quo warranto bring into question the right of his opponent to hold the office, with the view to have the same declared vacant.    The case just cited does not hold that such defeated candidate could by quo warranto contest for the office itself.    In this connection, we repeat that in the case now in hand Scandrett was not seeking to have the office declared vacant, nor to have adjudicated the abstract question of the right of Cutts to hold it.    Plainly the only purpose of Scandrett was to oust Cutts and get the office for himself, as a contestant for the same.    The decision in *Crovatt* v. *Mason*, 101 *Ga.* 246, did not relate to a contested-election case at all.    The contention in that case was that the successful candidate was ineligible to the office, and it was simply held there that a defeated candidate for the office, if a citizen of the city, had such an interest in the office as would entitle him to have the application granted in a proper case made.

The case of *Hardin* v. *Colquitt*, 63 *Ga.* 588, cited by counsel for defendant in error, contains nothing in conflict with this view.    The office contested for in that case, by petition for quo warranto, might have been contested for, under the statute, before the Governor.    It was not decided that the contest before the executive was merely cumulative, but it was simply decided that even if such remedy was exclusive, where full opportunity had been afforded to have the contest heard and determined, yet where a commission had issued inadvertently pending the contest and after due notice to the Governor, the remedy by quo warranto was available.    There is no pretense in this case that the petitioner for the writ of quo warranto did not have full opportunity afforded him to have his contest heard and determined by the ordinary of his county.    In fact, it appears that he actually commenced his proceeding for a contest and failed to successfully prosecute it.    In the case of *Corbett* v. *McDaniel*, 77 *Ga.* 544, it was practically decided that where the constitution and laws of the State empower the Governor to examine

the returns of all elections made to his department and to issue commissions, and he has accordingly done so, a proceeding in the nature of a quo warranto, alleging that the returns of the election for the particular office in question showed that the relator was elected to that office, and by mistake when they were consolidated they gave a plurality of votes to the respondent, who had been commissioned by the Governor, should have been dismissed on demurrer. It was further ruled in that case that under a proper proceeding for quo warranto, as to matters not passed on by the Governor and which he is not required to pass upon, the court would not undertake to say that a quo warranto might not issue. In the case of *Ginn* v. *Linn*, 83 *Ga.* 180, it was directly decided by this court, that in so far as an election to a county office is evidenced by the returns merely, a commission issued by the Governor is made final by the statute, where no hearing has been sought before the Governor prior to the commission being issued, and this is so whether the returns sent up be complete or incomplete. We think the principle decided in that case controls the question now under consideration. There the law provided for a contest before the Governor, and it provided that the party desiring to make the contest should take certain steps before the Governor acted upon the returns and issued the commission. No such steps were taken. On page 187, Chief Justice Bleckley, delivering the opinion, stated that while the returns were alleged to have been incomplete, an important omission having been made in sending them up to the capital, yet if the parties interested in the election neglected to see that all of the precincts were included and failed to discover the omission, if any, before the commission issued, the courts could not aid them as the law then stood. That really seems to have been a stronger case for the plaintiff than the one presented by this record, and the decision must have been based upon the idea that the remedy of a contest before the Governor, prescribed by the statute, was exclusive, and that the petition for quo warranto would not lie upon any ground which could have been made a subject-matter of contest before the Governor. It can make no difference in principle what particular officer or person the statute

designates as a proper tribunal to hear a contested-election case, whether it be a governor, ordinary, or other officer, individual, or court of the State. The law authorizing the Governor to hear and determine contested elections of certain officers, existing at the time the above decisions were made (see section 1329 of the Code of 1882), it will be noted, did not contain the same imperative words as are employed in the act of 1893. If that law, under which the Governor was empowered to act, excluded the jurisdiction of the courts by quo warranto, or any other common-law proceeding, we think it necessarily follows that the act of 1893 must receive the same construction. This is really the first time that the question as to whether the above-cited act of 1893 provides an exclusive remedy for the contest of elections of the officers therein named has ever been made before this court. Speaking for myself, I am inclined to the opinion that by the terms of that act the remedy is not only exclusive so far as concerns the contest by a defeated candidate claiming the office, but it is also exclusive when such contest is made in behalf of the State or the public. If we are right in our view of the construction of that statute, I can see no reason for not applying it to any party who may see fit to contest an election. It is not, however, necessary to determine this question in this case, and we have endeavored above to show that our decision in this particular case, touching the rights of a defeated candidate, is not in conflict with any decisions of this court, even construing such as were made before the act of 1893 as being applicable to the issue before us.

3. It is insisted by counsel for defendant in error, that the question relating to the jurisdiction of the court below is res adjudicata between the parties; that this question, on the preliminary hearing, was determined by Judge Felton adversely to the contention of the plaintiff in error, and no exception being filed as provided by law to that decision, Judge Butt, when the case came on for trial before him on final hearing, did not err in overruling the demurrer to the final petition filed by the solicitor-general, as the grounds of that demurrer involved the same questions of law that were passed upon by Judge Felton. The record discloses the fact that the

petition presented to Judge Felton was for the purpose of obtaining leave of the court to file an information in the nature of a quo warranto.   It was not contemplated that the case would be finally tried upon this petition.   It was a mere preliminary step taken in the case, for the purpose of obtaining authority for the solicitor-general, in the name of the State, to bring an action upon which the issues involved between the parties could be heard and determined on final trial.   Upon the hearing of the first petition, the respondent objected, in the form of a demurrer, to such leave being granted by the court, on various grounds, one of which related to the jurisdiction of the superior court to try the case.   We do not think it would have been proper practice for the court to have sustained the demurrer, for the effect of that would have been to have dismissed the petition.   The only question for the judge to pass upon was whether or not he should grant the leave to file the information.   It is true he might have refused to grant this prayer on the ground insisted upon in the demurrer, but it does not follow from this that he should have sustained the demurrer and summarily dismissed, at chambers, the petition.   If he had refused the application, this would have been a final judgment which could have been reviewed by a direct bill of exceptions to this court.   Having granted the prayer, however, the petition thus authorized to be filed by the solicitor-general, in the name of the State, was accordingly filed, and due notice of its pendency in court was given to the respondent in this case. Upon this latter action the case came on for trial before Judge Butt, and the question was directly made by the respondent in his demurrer, properly filed to the action, that the court had no jurisdiction to proceed with the case.   Speaking for myself, I do not think that the action of Judge Felton in granting a mere interlocutory order in the case at a preliminary hearing, and in overruling the respondent's demurrer to the application before him, precluded the respondent from again raising, by demurrer, before Judge Butt, when the case came up before him for final trial, the question touching the jurisdiction of the court to proceed with the case.   Certainly the rulings of a judge upon a mere preliminary hearing of a case of this sort

would not bind the judge at the final trial to proceed with the case, regardless of what views he might entertain concerning his jurisdictional power over the subject-matter of the suit. Indeed, we think that whenever it appeared, either from the pleadings or the evidence in the case, that the court over which he was presiding had no jurisdiction to pass upon or determine the issue involved, it would be the manifest duty of the judge to refuse to proceed with the trial and to dismiss the action, even if such a question was not raised by counsel for either party in the case. Apart, then, from the question as to whether or not counsel for the plaintiff has properly raised this issue in the court below, when the record discloses that the court had no jurisdiction to try the case and render the final judgment complained of, this court will reverse such a judgment. If we are correct in our conclusions above, the superior court had no jurisdiction over the subject-matter of this action. The subject-matter is a contest over an election between two rival candidates for a municipal office. If the ordinary has exclusive jurisdiction in such a case, no other court or tribunal has the power to hear and determine such a contest; nor can such power be conferred either by consent or waiver of parties. In 12 American & English Encyclopædia of Law, 30, it is declared that "Parties can not, of their own authority, independently of constitution or statutes, confer judicial authority. . . Consent does not estop from denial of jurisdiction." Among a number of authorities cited to sustain that text is the case of *Castleberry* v. *State*, 68 *Ga.* 49, where it was decided that a want of jurisdiction in a judge will not work a dismissal of the writ of error, but a reversal of the judgment. See Civil Code, § 5079. The rule laid down in the case of *Pope* v. *Jones*, 79 *Ga.* 487, is, that when a court below entertains a suit of which it has no jurisdiction and acts thereon, the bill of exceptions complaining of the judgment of that court will not be dismissed, but the judgment will be reversed ; but where the court below has no jurisdiction and refuses to act, a bill of exceptions based upon such refusal will be dismissed. This question was directly passed upon by the court in the case of *Smith* v. *Ferrario*, 105 *Ga.* 53. It appeared in that case that there was no plea to the

jurisdiction of the court, and that both parties had consented for the judge to hear and determine the case. Chief Justice Simmons, in delivering the opinion, says: "Consent of parties, however, can not give a court jurisdiction of a subject-matter when it has none by law; and when this court discovers from the record that a judgment has been rendered by a court having no jurisdiction of the subject-matter and the case is brought here for review upon writ of error, this court will of its own motion reverse the judgment." To the same effect see the case of *O'Brien* v. *Harris*, 105 *Ga.* 735. From the opinion in that case it appears that the question of jurisdiction was not even argued before this court, and the decision of this court was based upon the presumption that it was waived for the purpose of obtaining a final adjudication of the issues involved. Yet it was decided by this court that, even upon such consent and waiver, it could not sustain a judgment of the court below in a case where no jurisdiction had been conferred upon it by law.

There are several other questions made in the record, relating to various rulings of the judge on other matters during the progress of the trial, which, in the view we take of this case, it is, of course, unnecessary to consider. The court being without jurisdiction, the result of the trial, terminating in a verdict and judgment for the plaintiff, is necessarily a nullity; and direction is accordingly given that the same be set aside and the case be dismissed.

*Judgment reversed, with direction. All the Justices concurring.*