A95A0979. GROVE et al. v. SUGAR HILL INVESTMENT ASSOCIATES, INC. et al.
A95A1137. MID-AMERICAN WASTE SYSTEMS OF GEORGIA, INC. et al. v. SUGAR HILL INVESTMENT ASSOCIATES, INC. et al.
(466 SE2d 901)

BEASLEY, Chief Judge.
The appeal involves the validity of a city council resolution ap-

proving a "restated lease and operating agreement" between the City of Sugar Hill ("City") and its solid waste treatment provider, Mid-American Waste Systems of Georgia, Inc. ("Mid-American"). The lease agreement included provisions for the potential expansion of an existing landfill. Mid-American, Grove, and Driver enumerate as error the trial court's denial of their motions for summary judgment and the grant of summary judgment to plaintiffs on one count of plaintiffs' complaint in this declaratory judgment action. A direct appeal is authorized by OCGA § 9-11-56 (h) and *Southeast Ceramics v. Klem*, 246 Ga. 294 (271 SE2d 199) (1980).

Plaintiffs Sugar Hill Investment Associates, Inc. ("SHIA"), Albertson, Parker, Wayne and Louise Ballew, Bagley, and "HOPE" (Homeowners for a Positive Environment, Inc., a non-profit corporation organized to promote ecologically sound land use), initially moved for a temporary restraining order to prevent the City from adopting the agreement. The individual plaintiffs and SHIA own property near the landfill. Defendants Grove and Driver, sole stockholders of Mid-American's predecessor with direct financial interest in the landfill due to a contract with Mid-American, were permitted to intervene.

After the trial court denied plaintiffs' motion for a temporary restraining order, the city council adopted the agreement at a meeting on August 9, 1993, and authorized its execution. Subsequently plaintiffs were awarded summary judgment on one count on the basis that the lease agreement provided for the location of additional acreage for a landfill and therefore constituted a siting decision which required prior public notice by publication under OCGA § 12-8-26 (b). The trial court concluded that the failure to give the public notice rendered the City's action ultra vires and the agreement void.

After an election changed the composition of the city council, the City realigned itself in this action and admitted that the agreement provided for siting an expanded landfill and was therefore void. The City has not joined in this appeal. Thus, Grove and Driver's argument that the City is estopped from attacking the validity of the agreement has no bearing on this appeal. Nor does their unsupported argument that the estoppel would extend to plaintiffs by virtue of the City's actions.

By lease agreements in 1985 (for thirty-eight acres) and 1989 (for six acres), the City leased to Mid-American's predecessor, for use as a sanitary landfill site, a forty-four-acre tract the City owned. The updated agreement at issue sets out the parties' obligations in relation to the operation of the landfill.

It also provides in paragraph 15 for the expansion of the landfill to 216.27 additional acres of identified parcels bordering the 44 acres, which was not previously designated for use as a landfill, and was not

yet owned by the City or Mid-American. The latter agreed to acquire it and deed it to the City before the end of 1993; when that was done, it would become subject to the lease agreement. Paragraph 16 provides that the contractor (Mid-American) will convey to the City 60 acres it owns, within 90 days, which acreage shall be subject to the lease agreement, except that the contractor retains a reversionary interest in the event it cannot get or chooses not to obtain a sanitary landfill permit for its use. That paragraph also subjects to the lease agreement 30 acres the City owns, "for use as landfill property."

The agreement's introduction states:

"WHEREAS the parties desire to add additional property to be subject to this restated Agreement to allow for a reconfiguration of the footprint of the proposed expansion of the existing landfill; and

"WHEREAS, the parties hereto deem it necessary and appropriate to address these issues by restating the Old Lease and to provide future stability, resources and reserves for Owner's solid waste disposal needs which will be mutually beneficial to both parties for years to come. . . ."

1. Grove, Driver, and Mid-American argue that the trial court erred in concluding that the agreement constitutes a siting decision within the meaning of OCGA § 12-8-26 (b), because it does not locate or transfer or affect any more property than is already subject to existing leases with the City. They maintain it simply identifies certain parcels of land that Mid-American might deed to the City in the future and that they might wish to develop as part of the landfill. They assert that the lease agreement provides that in order for these additional properties to become landfill sites, they would have to comply with all of the applicable laws, regulations, and ordinances. At that time, the siting decision would have to be made, pursuant to OCGA § 12-8-26 (b). Alternatively, the defendant-appellants contend that even if the lease agreement constitutes a siting decision, the agreement is not void and the remedy is to require the City to hold properly noticed hearings.

The Solid Waste Management Act, OCGA § 12-8-1 et seq., requires municipalities to publish a notice in a newspaper of general circulation at least once a week for two weeks before "taking action resulting in a publicly or privately owned municipal solid waste disposal facility siting decision." OCGA § 12-8-26 (b). Siting decisions include, but are not limited to, "such activities as the final selection of property for landfilling and the execution of contracts or agreements pertaining to the location of municipal solid waste disposal facilities within the jurisdiction." Id.

Clearly, the agreement pertains to the location and expansion of the City's landfill facilities and therefore is a siting decision within the meaning of OCGA § 12-8-26 (b). It constitutes mutual obligations

designating specified *additional* parcels for landfilling, to be added at the option of Mid-American alone, subject to permitting and other applicable laws for landfills. The agreement itself provides: "It is contemplated that Contractor may acquire additional tracts of land . . . for purposes of expanding the present operations of the landfill. . . . Owner shall accept any such conveyance subjecting said property to the Restated Agreement for potential use as a landfill." "Contractor shall use the Leased Premises as a sanitary landfill. . . ." Also, the City is obligated to assist Mid-American to obtain the necessary permitting.

We reject Grove and Driver's argument that, because the new property is contiguous to the existing landfill, the adoption of the agreement is not a siting decision. Such reasoning, taken to its logical conclusion, would allow for unlimited landfill expansion without public notice, so long as the additional property bordered an existing landfill. This does not conform to the legislature's purpose in enacting the Solid Waste Management Act, OCGA § 12-8-21 (a).

2. It is undisputed that the City failed to provide the statutory notice of the meeting in which the city council adopted the agreement at issue, as required under OCGA § 12-8-26 (b). The only notices were those posted on the City Hall notice posting board and at the end of the street in front of City Hall on August 6. The posted agenda listed, as a committee report, "Solid Waste: Proposed Restated Lease & Operating Agreement with Mid-American." At issue is the effect of the failure to give the requisite notice.

Municipalities have only limited power to enter into contracts and "[i]f a contract is beyond the power or competence of the local government, then the contract is termed ultra vires and is void." *Precise v. City of Rossville*, 261 Ga. 210, 211 (1) (403 SE2d 47) (1991). For an act to be considered ultra vires, "it must be beyond the 'power or authority of the (local government) to perform under any circumstances.' [Cit.] . . . An irregularity in the exercise of a granted power does not render the act in question ultra vires. [Cit.]" *City of Atlanta v. North by Northwest Civic Assn.*, 262 Ga. 531, 539 (7) (a) (422 SE2d 651) (1992); R. P. Sentell, Jr., Local Government and Contracts that Bind, 1969 Ga. L. Rev., pp. 546, 548.

Under some circumstances, as with the eight acres for which the State granted a landfill permit, and the balance of the forty-four acres which was already subject to landfill leases with the City, the City had the undisputed power and authority to enter into a new lease for the property to continue in use as a landfill. Thus, the ultra vires doctrine would not nullify the adoption of the entire agreement. However, officials' actions may be set aside "if they fail to comply with the law in the exercise of their discretion." *Lindsey v. Guhl*, 237 Ga. 567, 570 (II) (229 SE2d 354) (1976). Due process as set out in the law must

be followed. We conclude that the failure to comply with OCGA § 12-8-26 (b) by necessity invalidates that portion of the agreement relating to the siting decision — that portion of the agreement pertaining to the expansion of the acreage of the municipal solid waste disposal facility. *Johnson v. Rogers*, 214 Ga. App. 557, 558 (1) (448 SE2d 710) (1994) (summary judgment must be affirmed if correct on any ground).

Mid-American's solution, that the remedy for the failure to comply with OCGA § 12-8-26 (b)'s notice requirements is to compel the City to hold a properly noticed siting decision meeting, does not achieve the prescribed due process. The legislature stated its purpose in enacting the Solid Waste Management Act — to protect the health, safety, and well-being of Georgia's citizens and assure that solid waste facilities "do not degrade the quality of the environment by reason of their location, design, method of operation, or other means. . . ." OCGA § 12-8-21 (a). The implicit purpose of the notice requirements is to promote reasoned decisions on the location of waste facilities made after public discussion and to assure officials' accountability. See OCGA § 12-8-26. Compare *Harms v. Adams*, 238 Ga. 186 (232 SE2d 61) (1977). To effectuate this purpose, the legislature used mandatory language — the word "shall" — in fashioning the notice requirement. Id.; *McClure v. Davidson*, 258 Ga. 706, 710 (3) (373 SE2d 617) (1988). "As shall is a word of command, it can hardly be argued that the procedures are optional." *McClure*, supra at 710. Such language has been strictly construed to invalidate other municipal actions; *McClure* involves zoning.

Permitting the City to make a siting decision without complying with the statutorily mandated notice procedures and then remedying this error by holding pro forma hearings after the siting decision has been made would strip OCGA § 12-8-26 (b) of its essential meaning. Such a remedy thwarts the public notice requirement's purpose. A public airing must *precede* a decision if it is to have an unbiased, unencumbered effect on the decision. The purpose of the airing is to allow the presentation of all evidence and argument upon which a rational political decision can be made, not to give parties adversely affected by a decision merely an opportunity to reverse it. The score must be the result of plays made during the game, not after its conclusion.

3. Appellants did not contend, below or here, that the balance of the agreement survives due to the severability clause. We reach the question, however, because at bottom the issue in this case is the validity of the contract. Under Georgia law where the parties express an intent to frame a severable contract, " 'the invalid provision does not render other provisions of the contract void.' [Cit.]" *Horne v. Drachman*, 247 Ga. 802, 805 (2) (280 SE2d 338) (1981); *Martell v.*

*Atlanta Biltmore Hotel Corp.*, 114 Ga. App. 646, 649 (152 SE2d 579) (1966), appeal after remand 118 Ga. App. 172 (162 SE2d 815) (1968). The parties' intent may be expressed directly, through a severability clause, or indirectly, as when the contract contains promises to do several things based upon multiple considerations. OCGA § 13-1-8; *Charles v. Leavitt*, 264 Ga. 160, 161, n. 1 (442 SE2d 241) (1994). See also OCGA § 13-8-1.

The lease agreement includes a severability clause reflecting the parties' intent that invalid provisions be severed.[1] The last sentence of the clause causes no concern because it has no applicability in this case. The lease agreement is a complex document which addresses many matters unrelated to the illegal siting decision such as pre-existing leases, per ton host fees for solid waste, recovery of methane gas, and indemnification. Compare *Med. Doctor Assoc. v. Lab-Quip Co.*, 201 Ga. App. 880, 881 (1) (412 SE2d 625) (1991). The parties clearly expressed an intent to frame a severable contract and we do not read the contract as expressly conditioning validity of the remaining provisions on the validity of those paragraphs addressing the problematic siting decisions. OCGA § 13-1-8 (b); *Kem Mfg. Corp. v. Sant*, 182 Ga. App. 135, 139-140 (4) (355 SE2d 437) (1987).

Accordingly, although the trial court's order granting plaintiffs' motion for summary judgment is affirmed insofar as it declares void the city council resolution as to the siting decision, it is reversed insofar as the order in effect invalidates the entire agreement.

4. Defendants argue that the trial court erred in denying their motion for summary judgment on Count 2 of the complaint, which alleges that paragraph 30 of the lease agreement constitutes a zoning decision within the meaning of OCGA § 36-66-3 (4). They deny that the agreement is a zoning decision within the meaning of the statutory provision. Plaintiffs, on the other hand, maintain that the entire agreement is void due to defendants' failure to provide the notice mandated by OCGA § 36-66-4 before taking action on a zoning decision.

Paragraph 30 is not a zoning decision within the meaning of the statute. OCGA § 36-66-3 (4) defines zoning decision in pertinent part

---

[1] "*Invalid Provisions.* If any provision of this Restated Agreement is held to be illegal, invalid, or unenforceable under present or future laws effective during the term hereof such provisions shall be fully severable; the Restated Agreement shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part hereof or thereto; and the remaining provisions hereof or thereof shall remain if [sic] full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance herefrom or therefrom. Furthermore, in lieu of such illegal, invalid or unenforceable provision, there shall be added automatically as a part hereof or thereto a provision that is similar in terms to such illegal, invalid or unenforceable provision as may be possible and still be legal, valid and enforceable."

as a "final action by a local government which results with . . . the adoption of an amendment to a zoning ordinance which rezones property from one zoning classification to another." In paragraph 30 of the agreement, the City agreed only to "join with [Mid-American] in any lawful efforts needed to achieve compliance with all federal, state, and local laws, regulations, and ordinances to maximize the sanitary landfill capacity of the premises leased. . . ." It is undisputed that the zoning ordinance was not actually amended. Although paragraph 30 may require a future amendment to the zoning ordinance, the adoption of paragraph 30 does not constitute "the adoption of an amendment" or a "final action" under the statute. Therefore, the trial court erred in denying summary judgment to defendants on Count 2 of the complaint as a matter of law.

Accordingly, the orders denying defendants' motions for summary judgment are affirmed in part and reversed in part. The remaining enumerations of error (3 and 5 through 10) raise no reviewable grounds either because genuine issues of material fact remain to be tried, the record is not sufficiently developed to permit legal analysis at this stage of the proceedings, or the parties have provided insufficient record citations. *Manderson & Assoc. v. Gore*, 193 Ga. App. 723, 733 (389 SE2d 251) (1989). See Court of Appeals Rule 27 (c). These cases are remanded for further proceedings consistent with this opinion.

*Judgments affirmed in part and reversed in part. Pope, P. J., and Ruffin, J., concur.*

DECIDED DECEMBER 20, 1995 —
RECONSIDERATION DENIED JANUARY 5, 1996 —

*Boyce, Ekonomou & Atkinson, Peter F. Boyce, Catherine M. Packwood*, for appellants (case no. A95A0979).

*Dan A. Aldridge, Jr., Chad K. Reed*, for appellants (case no. A95A1137).

*Kirwan, Parks, Chesin & Remar, Robert B. Remar, Susan M. Garrett*, for appellees.

