A97A1002, A97A1334. CITY OF ARCADE v. EMMONS et al.
(two cases).
(494 SE2d 186)

ANDREWS, Chief Judge.

After annexing land located in adjacent, unincorporated Jackson County into its corporate limits, the City of Arcade entered into a contract with Bartram Environmental, Inc. setting forth the terms under which Bartram proposed to own and operate a landfill on a portion of the annexed property. The contract was contingent upon Bartram's ability to obtain a permit for the landfill pursuant to the Georgia Comprehensive Solid Waste Management Act (hereafter the Solid Waste Management Act or the Act) (OCGA § 12-8-20 et seq.) and upon Bartram's purchase of the property from a third party. After the City entered into the contract, Greg Emmons and Ron Smith, both citizens of the City of Arcade, and a group known as Citizens United for a Better Jackson County, Inc. brought suit against the City for a declaratory judgment and injunctive relief claiming the City failed to comply with provisions of the Solid Waste Management Act.

The suit sought a declaration that the contract between the City and Bartram was void because the City failed to comply with the provisions of the Act set forth in OCGA § 12-8-26 relating to public meetings on the selection of a landfill site within the City. The suit also sought the issuance of an injunction: (1) prohibiting the City from holding any public meetings required by the Solid Waste Management Act for issuance of a permit to Bartram for operation of a landfill within the City, and (2) prohibiting the City from issuing a

business permit to Bartram to operate a landfill within the City.

After a bench trial, the trial court issued an order filed on November 4, 1996, finding that the City violated the provisions of OCGA § 12-8-26 and declaring that the contract between the City and Bartram was void. The trial court also ruled in the order that the City was "permanently enjoined from taking any actions in conjunction with Bartram Environmental, Inc. which flow from the May 27, 1993 decision to site a [landfill on the annexed property]." In Case No. A97A1002, the City appeals from the trial court's November 4, 1996 order. The trial court also subsequently entered three orders on November 27, 1996: (1) finding the City in civil contempt of its November 4 order; (2) ordering the City to pay the plaintiffs' attorney fees for bringing the contempt motion; and (3) modifying the November 4 order. In Case No. A97A1334, the City appeals from the November 27 orders. Both appeals were originally filed in the Supreme Court, which transferred the appeals to this Court.

## Case No. A97A1002

The City contends that the trial court erred by: (1) finding that it violated the provisions of the Solid Waste Management Act set forth in OCGA § 12-8-26 (a) and (b) requiring that certain public hearings be held on the selection of a site for the landfill within the jurisdictional limits of the City; (2) concluding that the effect of the City's failure to comply with OCGA § 12-8-26 was to render the landfill contract between Bartram and the City invalid; and (3) permanently enjoining the City from taking any action in furtherance of Bartram's proposed landfill on the property annexed by the City.

1. We first consider whether the City violated the statutory requirements of OCGA § 12-8-26. Subsections (a) and (b) of OCGA § 12-8-26 set forth the circumstances under which public hearings must be noticed and held by the City as part of the Solid Waste Management Act's "comprehensive state-wide program for solid waste management which will assure that solid waste facilities, whether publicly or privately operated, do not adversely affect the health, safety, and well-being of the public and do not degrade the quality of the environment by reason of their location, design, method of operation, or other means. . . ." OCGA § 12-8-21 (a). Under the Act, the director of the Environmental Protection Division (EPD) of the Georgia Department of Natural Resources is charged with primary responsibility for implementing the policies of the Act. OCGA § 12-8-21 (d). The EPD accepts applications for permits to operate facilities under the Act and is authorized to issue permits upon determining that there has been compliance with the requirements of the Act. OCGA §§ 12-8-23.1 (a) (3); 12-8-24 (a), (d).

In this case, after the land at issue was annexed into the City in May 1993, Bartram contracted to purchase a portion of the land from the owner in August 1993, for the purpose of developing a landfill, and executed a contract with the City in November 1993, setting forth terms for operation of the landfill within the City. Bartram subsequently applied to the EPD in December 1994, for issuance of a permit for it to own and operate a municipal solid waste landfill on the property within the jurisdictional limits of the City. Since the proposed landfill would be located within the City, issues arose as to whether or not public meetings on site selection under OCGA § 12-8-26 applied to the City; if they did apply, whether or not the City complied with the requirements; and the effect of any failure by the City to comply.

Subsection (a) of OCGA § 12-8-26 provides that: "Any county, municipality, group of counties, or authority beginning a process to select a site for a municipal solid waste disposal facility[1] must first call at least one public meeting to discuss waste management needs of the local government or region and to describe the process of siting facilities to the public. Notice of this meeting shall be published within a newspaper of general circulation serving such county or municipality at least once a week for two weeks immediately preceding the date of such meeting."

Subsection (b) of OCGA § 12-8-26 provides that: "The governing authority of any county or municipality taking action resulting in a publicly or privately owned municipal solid waste disposal facility siting decision shall cause to be published within a newspaper of general circulation serving such county or municipality a notice of the meeting at which such siting decision is to be made at least once a week for two weeks immediately preceding the date of such meeting. Such notice shall state the time, place, and purpose of the meeting and the meeting shall be conducted by the governing authority taking the action. A siting decision shall include, but is not limited to, such activities as the final selection of property for landfilling and the execution of contracts or agreements pertaining to the location of municipal solid waste disposal facilities within the jurisdiction, but shall not include zoning decisions."

The facts relevant to the application of subsections (a) and (b) are as follows:

The evidence shows that, as early as December 1992, the Arcade city council was aware that certain land outside of and adjacent to the City in unincorporated Jackson County was being considered by

---

[1] Under OCGA § 12-8-22 (19), the definition of a "municipal solid waste disposal facility" includes a "municipal solid waste landfill" as defined in OCGA § 12-8-22 (20).

private developers as a possible site for location of a landfill. The City was also aware that, if the proposed landfill was located within the City, substantial revenue would accrue to the City as the host local government under the provisions of the Solid Waste Management Act. OCGA § 12-8-39 (d). At a city council meeting on May 27, 1993, the land was annexed into the City.[2] It is undisputed that the City annexed the property so that it would be in a position to benefit from the revenues that would accrue to the City if a private developer later obtained a permit for and operated a landfill on the annexed property. At the time of the annexation, the City had no plans to develop or operate a publicly owned landfill, no agreement with any private developer to locate a landfill on the annexed property, and did not know whether a private developer would eventually propose to locate a landfill on the annexed property.

Bartram's first contact with the City was in June 1993, when it sent a letter to the City informing the City that it was interested in developing a landfill on a portion of the recently annexed property and that it was negotiating with the owner for a purchase agreement over the property. Bartram eventually contracted with the owner in August 1993, to purchase the property contingent upon Bartram's ability to obtain a permit from the EPD to operate a landfill on the property.

In September 1993, a Bartram representative met with the mayor of Arcade and discussed the possibility of submitting a proposal to the City for the operation of a landfill within the City. At a September 14, 1993 city council meeting, a Bartram representative presented a proposal for the terms under which Bartram would contract with the City for operation of a landfill on a portion of the annexed property. A motion was made by a council member to accept Bartram's proposal and to direct the City attorney to draw up a contract. The motion was approved by a two-to-one vote. After the September 14 council meeting, the City's attorney was directed to draw up a contract based on Bartram's proposal. A city council meeting was held on October 12, 1993, at which there were discussions about the City's negotiations with Bartram on a landfill contract. A contract between Bartram and the City was prepared substantially incorporating the terms of the proposal made at the September 14 council meeting, and the contract was formally approved and executed by the City at a city council meeting held on November 16, 1993.

---

[2] Although the annexation may have been procedurally defective under the then existing City charter, the parties do not contest the trial court's conclusion that Ga. L. 1995, p. 4024 amended the charter and included the annexed property within the jurisdictional limits of the City of Arcade.

On these facts, the trial court concluded that the City, "beg[an] the process of selecting a site for a municipal solid waste disposal facility by the end of the 5/27/93 council meeting without complying with OCGA § 12-8-26 (a)." The record shows that the City of Arcade held no public meeting pursuant to subsection (a). The City contends that no such meeting was required because subsection (a) would apply only to the site selection process initiated for a facility publicly owned by the municipality and not to the site selection process conducted by Bartram for its proposed privately owned facility.

Under the language of subsection (a), the public meeting requirement applies to a municipality such as Arcade only if the evidence shows that the municipality was "beginning a process to select a site for a municipal solid waste disposal facility." Subsection (a) obviously applies to a municipality engaged in its own process of selecting a site where the municipality is the applicant to the EPD for the operation of a publicly owned facility. We conclude that subsection (a) may also apply in cases where the applicant to the EPD is a private developer applying for a privately owned and operated facility to be located in the municipality. In those cases, even though the proposed facility would be private, the public meeting requirement of subsection (a) would apply where the evidence shows that the municipality acted for or in collaboration with the private developer in "beginning a process to select a site."

On the present record, however, we find no basis for concluding that the City of Arcade took any action which required it to hold a public meeting under subsection (a). There is no evidence that the City was involved in beginning a process to select a site for the landfill at issue within the meaning of OCGA § 12-8-26 (a). When the City annexed the property at its May 27 council meeting, there is no evidence that it acted for or in collaboration with Bartram to select the annexed property for a landfill site. The evidence shows that Bartram acted independently in selecting the annexed site for its proposed landfill. The fact that the City was aware that private developers might be interested in developing the property and annexed it for the sole reason that a developer might later select it for a landfill site is not sufficient to show that the City was "beginning a process to select a site" for the proposed facility within the meaning of OCGA § 12-8-26 (a) or making a siting decision under OCGA § 12-8-26 (b). Although the City later entered into a contract with Bartram in November 1993, governing operation of the proposed landfill at the selected site and requiring the City's cooperation with Bartram in its application to the EPD, this action was not governed by the requirements of subsection (a) but rather was a "siting decision" governed by the requirements of subsection (b) of OCGA § 12-8-26.

The trial court also concluded that the City violated the notice

and public meeting requirements of OCGA § 12-8-26 (b).

It is undisputed that public notice pursuant to subsection (b) was given by the City prior to the November 16, 1993 city council meeting but was not given prior to the September 14, 1993 city council meeting. Although the contract between the City and Bartram pertaining to the location of the landfill was not executed until the November 16 meeting, subsection (b) makes clear that a siting decision is not necessarily limited to the actual execution of the contract pertaining to the location of the landfill. A siting decision is generally defined as any "action resulting in a publicly or privately owned municipal solid waste disposal facility siting decision." OCGA § 12-8-26 (b).

In the present case, it is clear that, at the September 14 city council meeting, action was taken that resulted in a siting decision within the meaning of subsection (b). After Bartram made its contract proposal at the September 14 meeting, a motion was made by a city council member to accept the proposal. Although there was evidence that the two-to-one vote in favor of the motion was not sufficient under the then-existing City charter to make it an official act by the City, the record shows that the City attorney was directed to draft a contract incorporating Bartram's proposal and that, after the September 14 meeting, such a contract was drafted. The contract was formally approved and executed at the November 16 city council meeting. Despite the unofficial nature of the action taken by the city council at the September 14 meeting, we conclude that it was action resulting in a siting decision under subsection (b) of OCGA § 12-8-26 which required that the City provide statutory notice of the meeting. The City's properly noticed meeting on November 16, at which the contract was formally executed, was not sufficient to satisfy the statutory requirement for public notice prior to action resulting in a siting decision. See Grove v. Sugar Hill Invest. Assoc., 219 Ga. App. 781, 783-784 (466 SE2d 901) (1995). Since the City failed to give public notice under subsection (b) prior to the September 14 meeting, it violated the statutory requirements. Although the trial court may have concluded that the City violated subsection (b) for other reasons, a decision right for any reason will be affirmed.

2. We find no error in the trial court's conclusion that the contract between the City and Bartram was void. Because the City failed to provide the statutory notice of the September 14 meeting, the trial court correctly concluded that the contract between the City and Bartram for the siting of the landfill was invalid. Grove, supra at 784-785.

3. The trial court erred, however, in granting a permanent injunction against the City. We find no basis for the trial court's grant of a permanent injunction prohibiting the City from taking any actions in conjunction with Bartram Environmental which flow from

the decision to site a landfill on the annexed property. The City's failure to hold a properly noticed meeting pursuant to OCGA § 12-8-26 (b) rendered its siting decision and contract with Bartram invalid, but that failure does not prevent the City from subsequently holding a properly noticed meeting for public discussion of a new siting decision and consideration of a new agreement with Bartram for the operation of a landfill on the same site. As long as the City complies with the statutorily mandated notice procedures and provides for public discussion preceding a siting decision, the Act's purpose to promote "reasoned decisions on the location of waste facilities made after public discussion and to assure officials' accountability" is satisfied. See *Grove*, supra at 785.

Moreover, the effect of the permanent injunction granted by the trial court is to halt the administrative process by which the EPD is charged with the responsibility of considering Bartram's application for a landfill permit under the requirements of the Solid Waste Management Act. The City of Arcade, as the municipality where the proposed landfill would be located, is required by the Act to give notice of and to hold certain public meetings before the EPD would be authorized to issue a permit to Bartram. OCGA §§ 12-8-24 (d); 12-8-26 (b). The trial court's broadly worded permanent injunction would prohibit the City from noticing or holding these public meetings and effectively enjoin the administrative procedure by which Bartram's application is considered by the EPD. Although the trial court had jurisdiction to consider whether the City's violation of statutory procedures rendered its contract with Bartram void (*Grove*, supra), it did not have jurisdiction in this case to exercise control over matters which the legislature has determined are within the primary administrative jurisdiction of the EPD with appeal therefrom pursuant to OCGA § 12-2-2 (c) and the provisions of the Georgia Administrative Procedure Act. See *Bailey v. Wilkes*, 162 Ga. App. 410, 412-414 (291 SE2d 418) (1982); *George v. Dept. of Natural Resources*, 250 Ga. 491 (299 SE2d 556) (1983); OCGA §§ 12-8-21 (d); 12-8-23.1; 12-8-24.

## Case No. A97A1334

4. Pursuant to a motion for contempt brought by the plaintiffs below, the trial court entered an order on November 27, 1993, finding that the City was in civil contempt of its November 4, 1996 order permanently enjoining the City from holding public hearings required by the Solid Waste Management Act before the EPD would be authorized to issue a permit to Bartram. Specifically, the trial court found that the City was in contempt for attempting to circumvent its order by allowing Bartram to utilize the city hall to conduct a public meeting noticed and represented to be held in compliance with OCGA

§ 12-8-24 (d).

The trial court also issued two additional orders on November 27 in conjunction with the contempt order. In the first of these orders, the trial court ordered the City to pay the plaintiffs' attorney fees for bringing the contempt motion. In the second order, the trial court modified its November 4, 1996 order to specifically state that the City was enjoined from holding the hearing pursuant to OCGA § 12-8-24 (d) and from taking any other action required by the Act in furtherance of Bartram's permit, and found that the hearing held by Bartram was a nullity and failed to comply with the provisions of OCGA § 12-8-24 (d).

We find the trial court erred in entering all three November 27 orders. For the reasons stated in Division 3, supra, the trial court was without subject matter jurisdiction to enter the portion of its November 4, 1996 order which enjoined the City from holding hearings it was authorized and required to hold under the provisions of the Solid Waste Management Act as administered by the EPD. A judgment on a matter not within the court's jurisdiction is void, and the issue may not be waived. *Bowers v. Estep*, 204 Ga. App. 615, 616 (420 SE2d 336) (1992); *Hubbard v. State*, 225 Ga. App. 154, 155 (483 SE2d 115) (1997). Even where the subject matter jurisdiction of the trial court is not raised on appeal, the appellate court will of its own motion address the issue and reverse the judgment. *Cutts v. Scandrett*, 108 Ga. 620, 634 (34 SE 186) (1899).

It follows that the trial court was without authority to: (1) find the City in contempt for violating the void portion of its November 4 order; (2) award attorney fees on the contempt motion; and (3) modify the void portion of the November 4 order as to the same or additional matters within the jurisdiction of the EPD.

*Judgment affirmed in part and reversed in part in Case No. A97A1002. Judgment reversed in Case No. A97A1334. Ruffin and Eldridge, JJ., concur.*

DECIDED OCTOBER 9, 1997 —
RECONSIDERATION DENIED OCTOBER 22, 1997 —

*Schreeder, Wheeler & Flint, David H. Flint, Mark W. Forsling, Donna S. Golden, Vernadette Ramirez*, for appellant.

*Decker & Hallman, F. Edwin Hallman, Jr., David C. Moss, Tolbert & Elrod, Scott R. Tolbert, Christopher D. Elrod*, for appellees.

*Ernest De Pascale, Jr.*, amicus curiae.