A10A1458, A10A1508. ZINKHAN v. BRUCE et al.; and vice versa.
(699 SE2d 833)

MILLER, Chief Judge.

These cases arise from dueling custody proceedings commenced after George Zinkhan III shot his wife, Marie Zinkhan, and killed himself, leaving their two minor children orphaned. Based on George and Marie's nomination of Lawrence Chris Zinkhan ("Zinkhan"), George's brother, as the children's testamentary guardian in their respective wills, the Athens-Clarke County Probate Court issued letters of testamentary guardianship pursuant to OCGA § 29-2-4 (b) to Zinkhan. Thereafter, Lawrence and Donna Bruce, Marie's brother and sister-in-law, respectively, filed a petition for custody in McDuffie County, which Zinkhan moved to dismiss for lack of jurisdiction. The superior court denied Zinkhan's motion and awarded joint legal custody of the children to the Bruces and Zinkhan and physical custody to the Bruces on a temporary basis.

In Case No. A10A1458, following our grant of his application for interlocutory appeal, Zinkhan appeals the superior court's order

granting the Bruces' petition for custody ("custody order"). He argues that the superior court lacked subject matter jurisdiction to consider their petition because the probate court had original exclusive jurisdiction to appoint him as the children's testamentary guardian. In Case No. A10A1508, the Bruces appeal the probate court's order granting letters of testamentary guardianship to Zinkhan, contending that the probate court failed to consider the best interests of the children prior to appointing Zinkhan. Given the related nature of these appeals, we have consolidated them for disposition.

In Case No. A10A1508, we find that OCGA § 29-2-4 (b) mandated the issuance of letters of testamentary guardianship to Zinkhan without notice and a hearing. Accordingly, we affirm the probate court's order. In Case No. A10A1458, we further find that the superior court lacked subject matter jurisdiction over the Bruces' petition for custody; therefore, we reverse the custody order.

Since the superior court's decision as to whether it had subject matter jurisdiction to consider the Bruces' petition for custody "was based on an application of law to undisputed facts, we apply a de novo standard of review." (Citation and footnote omitted.) *Snyder v. Carter*, 276 Ga. App. 426 (623 SE2d 241) (2005). The interpretation of OCGA § 29-2-4 (b) is a question of law, which we review de novo. *American Gen. &c. Ins. Co. v. Vance*, 297 Ga. App. 677 (678 SE2d 135) (2009).

The undisputed evidence shows the following: George and Marie are residents of Athens-Clarke County; Zinkhan is a resident of North Carolina; and the Bruces are residents of McDuffie County. In May 2009, after Marie's murder was discovered, but before George's whereabouts were known, the Bruces filed a petition for temporary guardianship of the children in McDuffie County, which the probate court granted. On June 22, 2009, Zinkhan filed a petition to probate George's will in common form in Athens-Clarke County and requested the issuance of letters of testamentary guardianship. On July 10, 2009, the Athens-Clarke County Probate Court accepted the will in common form but declined to issue letters of testamentary guardianship, finding that its grant of such letters would terminate the Bruces' temporary guardianship (see OCGA § 29-2-8 (a)) and deprive McDuffie County of the power to appoint a permanent guardian for the children. The probate court also questioned whether venue for the parties' competing guardianship claims was proper in McDuffie County.

On July 10, 2009, the Bruces filed petitions for permanent guardianship and conservatorship in the McDuffie County Probate Court. On August 28, 2009, pursuant to a McDuffie County Probate Court order transferring the Bruces' petitions to it (see OCGA §

29-2-14), the Athens-Clarke County Probate Court consolidated the Bruces' petitions with Zinkhan's request for letters of testamentary guardianship for trial, and scheduled a trial date of September 24, 2009. On the day of trial, Lawrence Bruce filed an objection to Zinkhan's appointment as testamentary guardian, requesting an evidentiary hearing to consider the best interests of the children and also filed a petition to probate Marie's will in solemn form. On that same day, Zinkhan filed a petition to probate George's will in solemn form, again requesting the issuance of letters of testamentary guardianship to him. Finding that the wills of George and Marie were proven in solemn form, the Athens-Clarke County Probate Court issued letters of testamentary guardianship to Zinkhan without a hearing.

On December 15, 2009, the Bruces filed a petition for custody in Athens-Clarke County pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act, OCGA § 19-9-40 et seq. ("UCCJEA"). They alleged, inter alia, that Georgia was the "home state" of the children; that they had legal custody of the children based on temporary letters of guardianship issued to them by the McDuffie County Probate Court; and that it was in the children's best interests to award them temporary and permanent legal and physical custody.[1] The Bruces later amended their petition to file a motion to modify custody under the UCCJEA, assuming without conceding that the letters of testamentary guardianship to Zinkhan constituted an award of custody. They argued, inter alia, that awarding custody to Zinkhan without a consideration of the children's best interests violated public policy. Finding that the children are "well cared for . . . [, that] [t]here has been bonding between the children and [the Bruces] . . . . [and] the children are doing well in school[,]" the McDuffie County Superior Court awarded joint legal custody of the children to the Bruces and Zinkhan and physical custody to the Bruces on a temporary basis. In doing so, the court relied on the UCCJEA, OCGA § 19-7-1, and its equity powers as its basis for exercising jurisdiction.

### Case No. A10A1458

1. Zinkhan argues that the superior court lacked subject matter jurisdiction to consider the Bruces' petition for custody because the probate court has exclusive jurisdiction to issue and revoke letters of testamentary guardianship and there is no valid basis for the superior court's exercise of jurisdiction. We agree.

---

[1] Believing that Lawrence Bruce's appeal of the probate court's order issuing letters of testamentary guardianship to Zinkhan was stayed during the pendency of the appeal, the Bruces requested an ex parte order awarding them temporary custody of the children.

In Georgia, "[p]robate courts have authority . . . to exercise original, exclusive and general jurisdiction of . . . [t]he granting of letters testamentary and of administration and the repeal or revocation of the same; . . . [and] [t]he appointment and removal of guardians of minors[.]" OCGA § 15-9-30 (a) (2) and (5). See also OCGA § 29-2-42 (a) (probate court is authorized to revoke or suspend letters of guardianship upon the petition of an interested person or sua sponte, should it find "good cause" after investigation). As testamentary guardian, Zinkhan was vested with the "same rights, powers, and duties as a permanent guardian appointed by the court," (OCGA § 29-2-4 (c)) including the "exclusive power, without court order, to . . . [t]ake custody of the . . . minor and establish the minor's place of dwelling within this state . . . and . . . [e]xercise those other powers reasonably *necessary to provide adequately for the support, care, education, health, and welfare of the minor.*" (Emphasis supplied.) OCGA § 29-2-22 (a) (1) and (5). Although the Guardianship Code does not specifically define custody, given the emphasized language above, we construe this to mean legal custody. See OCGA § 19-9-22 (2) (legal custodian is defined as "a person, including, but not limited to, a parent, who has been awarded permanent custody of a child by a court order"). Further, termination of Zinkhan's guardianship would not occur until the earliest of the following events: "the minor reaches age 18, the minor is adopted, the minor is emancipated, the minor dies, or a court order terminating the guardianship is entered." OCGA § 29-2-30 (a). None of these conditions were met.

Further, it is well settled that "subject-matter jurisdiction is established by our laws, and there is nothing parties to a suit can do to give a court jurisdiction over a matter that has not been conferred by law." (Citation, punctuation and footnote omitted.) *Snyder,* supra, 276 Ga. App. at 427. For the reasons set forth below, each of the superior court's asserted bases for jurisdiction over the Bruces' custody petition is inapplicable, and we find no basis for subject matter jurisdiction in this case.

First, the Bruces claim that the superior court had jurisdiction pursuant to the UCCJEA because Georgia is the "home state" of the children. See OCGA § 19-9-41 (7) (defining "home state" as the place where, inter alia, the children live or have recently lived with a person acting as a parent for at least six consecutive months). The children's physical presence in this state, however, is insufficient to confer subject matter jurisdiction over their petition, as the UCCJEA presumes that a "court" acting under its auspices already has jurisdiction to act as authorized by law. See OCGA §§ 19-9-41 (6) (defining "court" as "an entity authorized under the law of a state to establish, enforce, or modify a child custody determination");

YALE LAW LIBRARY

19-9-61 (c). Further, the UCCJEA only applies to *interstate* custody disputes where Georgia, as the "home state" of the children, makes an initial custody determination and another state no longer has jurisdiction or declines to exercise jurisdiction. See OCGA § 19-9-61 (a) (setting forth circumstances when Georgia, and not another state, has jurisdiction over an initial child custody determination).

Although the superior court also relied on OCGA § 19-7-1 as granting it jurisdiction over the Bruces' custody petition, this Code section is inapplicable because it is limited to a custody action between a parent and specified relatives, and here, the children's parents are deceased. OCGA § 19-7-1 (b.1); *Stills v. Johnson*, 272 Ga. 645, 648 (1) (533 SE2d 695) (2000) (OCGA § 19-7-1 (b.1) does not apply to a custody dispute between a grandmother and an uncle.).

While superior courts have subject matter jurisdiction over equity cases (Ga. Const. 1983, Art. VI, Sec. IV, Par. I), equity will only intervene "for the protection and relief of parties where, from any peculiar circumstances, the operation of the general rules of law would be deficient in protecting from anticipated wrong or relieving for injuries done." OCGA § 23-1-3. The Bruces had an appropriate remedy in the probate court to challenge the testamentary guardianship: a petition for revocation or suspension of Zinkhan's letters of testamentary guardianship. See OCGA § 29-2-42 (a) ("Upon the petition of any interested person or whenever it appears to the court that good cause may exist to revoke or suspend the letters of guardianship or to impose sanctions, the court shall cite the guardian to answer the charge."). If they prevailed in such matter, the Bruces could have sought further relief by filing a petition for permanent guardianship in the probate court, requiring such court to consider the children's best interests. See OCGA § 29-2-18. Instead, the Bruces have "attempted to collaterally attack the guardianship appointment of the probate court" by filing a custody action outside of the proper court, in superior court. *Bennett v. Bennett*, 194 Ga. App. 197, 199 (390 SE2d 276) (1990). We have held that "[j]udgments rendered in the exercise of [the probate court's jurisdiction to appoint and remove guardians of minors] can not be collaterally attacked." (Citation and punctuation omitted.) Id. Nor did the trial court assert a specific basis to justify its intervention in equity. As such, equity afforded no valid basis for the trial court's exercise of jurisdiction.

Inasmuch as the probate court did not revoke Zinkhan's letters of testamentary guardianship and the superior court lacked subject matter jurisdiction to consider the Bruces' petition for custody, we reverse the custody order.

## Case No. A10A1508

2. The Bruces contend that the probate court failed to consider the best interests of the children when it appointed Zinkhan as testamentary guardian. We are not persuaded.

When a parent, by will,

> nominate[s] a testamentary guardian for the parent's minor child[,] . . . [u]nless the minor has another living parent, upon probate of the parent's will, *letters of guardianship shall be issued to the individual nominated in the will* who shall serve as testamentary guardian *without notice or hearing* provided that the individual is willing to serve.

(Emphasis supplied.) OCGA § 29-2-4 (a) and (b). In 2004, the General Assembly revised the Guardianship Code, including the foregoing statute, effective July 1, 2005. Ga. L. 2004, p. 161, § 1. In construing a statute, we "shall look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy." OCGA § 1-3-1 (a). The predecessor statute, OCGA § 29-4-3 (b) (2004), provided that a surviving parent, by will, may appoint a guardian for the minor child's person, rather than the probate court. Ga. L. 1958, p. 673, § 1. Unlike OCGA § 29-2-4, the former statute did not specify that the testamentary guardian would serve "without notice or hearing," and lacked the language "letters of guardianship shall be issued[.]" We are also mindful that the United States Supreme Court and the appellate courts of this state have recognized "a constitutionally protected interest of parents to raise their children without undue state interference."[2] *Brooks v. Parkerson*, 265 Ga. 189, 191 (2) (454 SE2d 769) (1995).

Here, it is undisputed that both George and Marie nominated Zinkhan as the children's testamentary guardian in their respective wills; Zinkhan consented to serve as same; their wills were admitted in solemn form; no petition was filed to set aside the probate court order admitting their wills; and the probate court did not revoke its letters of testamentary guardianship to Zinkhan. See *In re Estate of Brice*, 288 Ga. App. 449, 452 (1) (654 SE2d 420) (2007) (probate of a will in solemn form is conclusive upon all parties notified, until reversed or set aside); OCGA § 53-5-20. While consideration of a child's best interest is pervasive in various sections of the Guardian-

---

[2] See also Radford, Guardianships and Conservatorships in Georgia, § 2-3, p. 59 (1st ed. 2005) (OCGA § 29-2-4 was intended to preclude a hearing on the fitness of the testamentary guardian, and, therefore, is "a reflection of parents' constitutionally protected liberty interest in raising their children without state interference.").

ship Code (see OCGA §§ 29-2-6 (f) (probate court considers the child's best interest in the appointment of temporary guardian); 29-2-18 (probate court shall consider the best interest of the minor when appointing a permanent guardian)), it is conspicuously absent from OCGA § 29-2-4 (b). See *Montgomery v. Montgomery*, 287 Ga. App. 77, 78 (650 SE2d 754) (2007) (in statutory construction, "the express mention of one thing implies the exclusion of another"). Thus, based on the plain language of OCGA § 29-2-4 (a) and (b), the probate court was mandated to issue letters of guardianship to Zinkhan, without notice and a hearing, and without consideration of the best interests of the children. See *Grove v. Sugar Hill Investment Assocs.*, 219 Ga. App. 781, 785 (2) (466 SE2d 901) (1995) ("As shall is a word of command, it can hardly be argued that the procedures are optional.") (citation and punctuation omitted). Accordingly, we affirm the order of the probate court.

*Judgment affirmed in Case No. A10A1508. Judgment reversed in Case No. A10A1458. Phipps, P. J., and Johnson, J., concur.*

DECIDED AUGUST 4, 2010 — ▮▮▮▮▮▮

*Gaslowitz & Frankel, Craig M. Frankel, Brian M. Deutsch, Lisa C. Lambert, Robert P. Marcovitch*, for appellant.

*Knox & Swan, Robert E. Knox, Jr., B. Lane Fitzpatrick, Jean M. Kutner, H. William Sams, Jr.*, for appellees.