314 Ga. 488
FINAL COPY

S22G0019. HALL et al. v. DAVIS LAWN CARE SERVICE, INC. et al.

PINSON, Justice.

A conservator of a minor is a person appointed by a court to take care of the minor's property. On appointment, the conservator gains the "exclusive power" to "[b]ring, defend, or participate in legal . . . proceedings" on the minor's behalf. OCGA § 29-3-22 (a) (6).

In this case, a conservator was appointed after the minor children's grandmother had already brought a wrongful-death lawsuit on their behalf. The conservator tried in various ways to exercise his litigation powers, with the apparent goal of dismissing the grandmother's lawsuit and bringing a similar one in a different county. The conservator was eventually joined as an "involuntary plaintiff" in the grandmother's lawsuit, see OCGA § 9-11-19 (a), and his further attempts to gain control of the litigation, in that court and others, were rejected. He appealed several rulings unfavorable

to him, but in *Hall v. Hill*, 360 Ga. App. 635 (859 SE2d 897) (2021), the Court of Appeals concluded that he had forfeited his exclusive power under OCGA § 29-3-22 (a) (6) earlier in the case when he declined to join the grandmother's case voluntarily and sought its dismissal.

We granted certiorari to review that holding. For reasons we explain below, we hold that a conservator who declines to join preexisting litigation voluntarily and seeks to have that litigation dismissed does not thereby forfeit his exclusive power to participate in that litigation after he is joined as a party under OCGA § 9-11-19 (a). So we reverse the Court of Appeals' contrary holding, vacate the parts of the Court of Appeals' opinion affected by it, and remand the case to that court for further proceedings consistent with this opinion.

1. (a) In May 2016, Shauntrice Jones died in a car accident. Soon after, her mother, Margaret Hill, brought a wrongful-death case against both the driver of the pickup truck that hit Jones's car and his employer, Davis Lawn Care Service, Inc. She brought that

case on behalf of Jones's two minor children as their next friend, and she filed it in Thomas County Superior Court. A week later, Hill petitioned that court to be appointed as the children's guardian ad litem, and the court appointed her that same day under OCGA § 9-11-17 (c) for the purpose of pursuing the wrongful-death claims.[1]

Around the same time, Hill petitioned the Mitchell County Probate Court to appoint her as the children's conservator.[2] Maurice Williams, the father of one of the children, objected and asked the probate court to appoint Michael Hall, the County Administrator, as conservator. While those petitions were pending, Williams moved for a stay in the Thomas County case pending the probate court's

---

[1] If an infant or incompetent person is not otherwise represented in a case, OCGA § 9-11-17 (c) requires the court to either appoint a guardian ad litem or "make such other order as it deems proper for the protection of the infant or incompetent person." That provision also prohibits a next friend from receiving the proceeds of an action on behalf of an infant or incompetent person without first entering into a bond to the Governor that is approved by the court. Id.

[2] A conservator "receive[s], collect[s], and make[s] decisions regarding the minor's property" and "act[s] as a fiduciary in the minor's best interest." OCGA § 29-3-21 (a). The conservator also has the "exclusive power" to, among other things, "[b]ring, defend, or participate in legal, equitable, or administrative proceedings, including alternative dispute resolution, as are appropriate for the support, care, education, health, or welfare of the minor in the name of or on behalf of the minor." OCGA § 29-3-22 (a) (6).

3

ruling on the appointment of a conservator. He noted that "[o]nce that is done, the [superior c]ourt can allow the proper party(s) [sic] to be substituted in and/or intervene as the minors' proper representative." Six months later, in January 2017, the probate court appointed Hall as the children's conservator and administrator of Jones's estate.

Hall began efforts to pursue wrongful-death claims on the children's behalf in Gwinnett County instead of Thomas County. He first filed a wrongful-death action on the children's behalf in Gwinnett County State Court, alleging their wrongful-death claims as well as survival claims on behalf of Jones's estate. Then, in the Thomas County case, he filed a "Notice to Court of Improper Plaintiff and Counsel and Request for Dismissal Without Prejudice." In that filing, he contended that he, not Hill, was the proper person to assert wrongful-death claims on behalf of the children. Hall, who was represented by the same lawyer who had represented Williams in the case, stated that Williams's earlier motion to allow substitution or intervention after a conservator was appointed was "hereby

4

withdrawn." Hall further declared that he had "no intention of appearing in or pursuing this case in this [c]ourt" and had made the filing "only as a special appearance and not as a party." Finally, Hall asked the court to dismiss the case without prejudice.

The defendants in the Thomas County case, however, tried to keep the case there. In that case, they moved to consolidate the Gwinnett County case and join Hall as a plaintiff in Thomas County.

After a hearing, the Thomas County Superior Court issued orders addressing the various filings before it. Those orders ultimately (1) denied Williams's earlier request to remove Hill as guardian ad litem; (2) denied Hall's "Notice to Court of Improper Plaintiff and Counsel and Request for Dismissal Without Prejudice" because Hill, as guardian ad litem, was the proper party to file the lawsuit; (3) consolidated the wrongful-death and survival claims in the Gwinnett County case with the Thomas County case; and (4) joined Hall as an involuntary plaintiff under OCGA § 9-11-19 (a) in his capacities as administrator of Jones's estate and conservator for

the minor children.[3]

After the dust settled, Hall continued his efforts to take control of the litigation on behalf of the children. He first moved to remove Hill as a plaintiff, citing OCGA § 29-3-22 (a) (6) (vesting in a conservator the "exclusive power to . . . participate in legal . . . proceedings . . . as are appropriate for the support, care, education, health, or welfare of the minor in the name of or on behalf of the minor"). The court denied the motion, reasoning that it was no different from the earlier filings and ruling that Hill would remain in the case (but not addressing Hall's argument under OCGA § 29-3-22 (a) (6)). Hall then moved for reconsideration and separately moved for a declaratory judgment that he had the sole right to control the case; the court denied the motions.

Undeterred, Hall tried to move the litigation back to Gwinnett

---

[3] Hill points out that the court initially entered two orders that joined Hall only in his capacity as administrator. But the court's final amended order joined Hall in his capacities as administrator and conservator. See OCGA § 15-1-3 (6).

County and put it under his control. In the Thomas County case, he filed a voluntary dismissal of the claims from the Gwinnett County case that had been consolidated with the Thomas County case. He then filed a renewal lawsuit in Gwinnett County State Court.[4] And he then filed a complaint in Gwinnett County Superior Court seeking, among other things, to enjoin Hill and the defendants in both cases from interfering with his pursuit of the wrongful-death and survival claims.

Hill responded on both fronts. In the Gwinnett County Superior Court case, she moved to dismiss the case or transfer it to the Thomas County Superior Court. In April 2020, the Gwinnett County Superior Court denied Hall's request for a preliminary injunction and granted Hill's motion to dismiss. In Thomas County, Hill moved to remove Hall from the case and enjoin him from "thwarting [its] prosecution," arguing that the court had determined that she was the proper party to bring the wrongful-death claims on

---

[4] The Court of Appeals noted that Hall represented that the renewal lawsuit remains pending. See *Hall*, 360 Ga. App. at 637 n.1. He does not repeat that representation before us.

behalf of the children and asserting that Hall did not satisfy the criteria for joinder under OCGA § 9-11-19 (a). Hall filed a cross-motion to remove Hill from the case and to enjoin her from proceeding with her wrongful-death claims.

In August 2020, the Thomas County Superior Court issued three orders: (1) an order striking Hall's dismissal of his Gwinnett County State Court claims, which had been consolidated with the Thomas County case; (2) an order removing Hall as a plaintiff in the Thomas County case and enjoining him from further filings; and (3) an order denying Hall's cross-motion to remove and enjoin Hill.

(b) Hall appealed the August 2020 Thomas County Superior Court orders and the April 2020 Gwinnett County Superior Court order, and the Court of Appeals decided the two appeals in one opinion. See *Hall,* 360 Ga. App. at 635-636.

In Division 1 (a), the court addressed Hall's argument that he had the exclusive right to pursue the wrongful-death claims because he was the children's conservator. See *Hall,* 360 Ga. App. at 637-640. The court first determined that Hill, who was acting as next

8

friend when she filed the Thomas County case and was later appointed as the minors' guardian ad litem, was the proper person to initiate the lawsuit at that time because no conservator had been appointed. See id. at 638 (citing OCGA § 9-11-17 (c)).

The Court of Appeals then quoted OCGA § 29-3-22 (a) (6), which says:

> Without court order, the appointment of a conservator shall vest in the conservator the exclusive power to . . . [b]ring, defend, or participate in legal, equitable, or administrative proceedings, including alternative dispute resolution, as are appropriate for the support, care, education, health, or welfare of the minor in the name of or on behalf of the minor.

The court explained that this language was "clear and unambiguous: after being appointed, the conservator alone has the power to bring, defend, or participate in an action on behalf of the minor." *Hall*, 360 Ga. App. at 639. The Court of Appeals then asked: "how does the conservator exercise this power if a case on behalf of the minor has been properly initiated before the conservator is appointed?" Id.

Noting Hall's argument that a "guardian ad litem must step aside when a conservator is appointed," the Court of Appeals said

9

that "the traditional mechanisms for non-parties to participate in lawsuits are through intervention, interpleader, and substitution." *Hall*, 360 Ga. App. at 639. The court then pointed out that Hall withdrew "any motion to intervene" in the Thomas County case, "stating that he had 'no intention of appearing in or pursuing (the) case in this Court, and . . . ma(d)e this filing only as a special appearance and not as a party,'" and that he asked the Thomas County court to dismiss the case without prejudice. Id. at 640. Describing these actions as "contrary to exercising his 'exclusive power' to 'participate in' the existing litigation," the Court of Appeals held that

> although Hall had the exclusive power to participate in the wrongful death action pending in the Superior Court of Thomas County, he expressly declined to exercise that right. So, any error on the part of the trial court in interfering with Hall's exclusive power as conservator to proceed on behalf of the minor children was self-induced by Hall and provides no ground for reversal.

Id.[5]

---

[5] In Division 1 (b), the Court of Appeals rejected Hall's argument that he could assert claims on behalf of the minors under OCGA § 51-1-9, which says,

10

In Division 4, the Court of Appeals concluded that the superior court did not err by striking Hall's voluntary dismissal of the claims he had asserted in the Gwinnett County State Court case, which had been consolidated with the Thomas County case. See *Hall*, 360 Ga. App. at 644. The court determined, however, that the trial court erred by dismissing Hall from the Thomas County case and enjoining him from further filings, because "as the administrator of [Jones's] estate . . . , he was the proper party to bring claims on behalf of [Jones's] estate." Id. So the court reversed the trial court's order dismissing and enjoining Hall in his capacity as administrator. See id.

Finally, in Division 5, the Court of Appeals rejected Hall's

---

"[e]very person may recover for torts committed to himself, his wife, his child, his ward, or his servant." See *Hall*, 360 Ga. App. at 641. And in Division 1 (c), the court declined to address Hall's claim that he had the exclusive right to assert claims for the estate, because the trial court had not ruled on that issue. See id. In Division 2, the court held that the Thomas County court did not abuse its discretion by denying Hall's request to vacate its order appointing Hill as guardian ad litem. See id. at 641-643. In Division 3, the court concluded that the Thomas County court properly joined Hall as a plaintiff and consolidated the children's wrongful death lawsuit with the lawsuit brought on behalf of Jones's estate. See id. at 643-644.

11

claim that the Gwinnett County Superior Court erred by denying his request for a preliminary injunction and dismissing his case. See *Hall*, 360 Ga. App. at 645. The court restated its holding in Division 1 (a) that Hall forfeited his exclusive power to assert claims on behalf of the children because he failed to use "one of the established mechanisms for a non-party to participate in" Hill's lawsuit. Id. The court then noted that Hall's lawsuit in the Gwinnett County Superior Court sought to enjoin Hill from "'interfering in any way with (his) pursuit of the wrongful death and survival claims for the minors[ ] and their mother's estate.'" Id. The court concluded that "Hall tried to evade the Superior Court of Thomas County's orders, but because he had an adequate remedy at law to appeal the decision of the Superior Court of Thomas County, he could not collaterally attack that court's ruling through an injunction." Id.

We granted Hall's petition for certiorari, asking:

Whether the Court of Appeals correctly determined that a conservator of minors [Hall] had forfeited his exclusive power to participate in litigation on behalf of the minors under OCGA § 29-3-22 (a) (6) after being involuntarily joined in litigation that had been initiated by the minors'

12

guardian ad litem [Hill] prior to the conservator's appointment[.]

2. A conservator of a minor is a person appointed by a court to "receive, collect, and make decisions" about the minor's property. OCGA § 29-3-21 (a). That appointment comes with a set of "exclusive power[s]." OCGA § 29-3-22 (a). One of these is the power to litigate for the minor: to "[b]ring, defend, or participate in" lawsuits and other proceedings "as are appropriate for the support, care, education, health, or welfare of the minor in the name of or on behalf of the minor." OCGA § 29-3-22 (a) (6).

Two features of this exclusive litigation power are notable. First, like the other powers granted to conservators under this provision, this power is an "exclusive power." OCGA § 29-3-22 (a). As used here, an "exclusive" power is one that is "limited to possession, control, or use by a single individual" and thus "exclud[es] others from participation." Merriam-Webster's Collegiate Dictionary 436 (11th ed. 2006) (defining "exclusive" in

this context as "limiting or limited to possession, control, or use by a single individual" and "excluding others from participation"). See also Black's Law Dictionary 1358 (10th ed. 2014) (defining "exclusive power" as "[a] power held by only one person or authoritative body").[6] So this grant of power allows a conservator not only to "[b]ring, defend, or participate in" these proceedings "in the name of or on behalf of the minor," but also to exclude others from doing so. See Mary F. Radford, Georgia Guardianship and Conservatorship § 3:8 (Sept. 2021 update) (explaining that OCGA § 29-3-22 (a) (6) is an "exclusive power" which "means that [it] may be exercised only by the conservator and not by the minor or any other individual or entity").

Second, this exclusive power is conferred on the conservator automatically. The statute provides that "[w]ithout court order, the appointment of a conservator shall vest in the conservator the exclusive power to" participate in legal proceedings for the minor.

---

[6] Because OCGA § 29-3-22 (a) (6) was enacted in 2004, we cite dictionaries published close in time to that enactment.

14

OCGA § 29-3-22 (a). So the appointment itself gives the conservator the immediate authority to exercise this exclusive power. See Black's Law Dictionary 747 (2d pocket ed. 2001) (defining "vest" in this context as "[t]o give (a person) an immediate, fixed right of present or future enjoyment"); Mary F. Radford, Georgia Guardianship and Conservatorship § 3:8 (Sept. 2021 update) (explaining that the powers granted under OCGA § 29-3-22 (a) "inure automatically to the conservator upon appointment").

3. None of the above is disputed here. As the Court of Appeals put it, "after being appointed, the conservator alone has the power to bring, defend, or participate in an action on behalf of the minor." *Hall*, 360 Ga. App. at 639. Thus, at the moment Hall was appointed as conservator, he alone held the legal authority to participate in legal proceedings on behalf of the minor children. This includes the wrongful-death case that was already pending in Thomas County. See id. at 640 (acknowledging that "Hall had the exclusive power to participate in the wrongful death action pending in the Superior Court of Thomas County"). That case was properly brought by Hill

15

as next friend of the children before Hall was appointed, see id. at 638 (citing OCGA § 9-11-17 (c)), but once he was, it was his prerogative to participate on their behalf and to exclude Hill or anyone else from doing so.

The problem, as the Court of Appeals saw it, was that Hall did not act like someone exercising that power. Rather than seeking to join the case as a party through intervention, interpleader, or substitution, he asked the court to dismiss the case and said he did not intend to appear or pursue the case in that court. Viewing these actions as "contrary to exercising his 'exclusive power' to 'participate in' the existing litigation," *Hall*, 360 Ga. App. at 640, the Court of Appeals concluded that Hall "forfeited" his power to participate in the case—even after the trial court joined him as an involuntary plaintiff under OCGA § 9-11-19. Id. at 645.

We must reject this conclusion. As affirmative support for it, the Court of Appeals relied on only a single case about "invited error." See *Hall*, 360 Ga. App. at 640 (citing *Mary Allen Realty & Mgmt., LLC v. Harris*, 354 Ga. App. 858, 862 (841 SE2d 748) (2020)).

16

But invited error arises when the complaining party did something to invite the decision that the party later appealed as error. See *Carnett's, Inc. v. Hammond*, 279 Ga. 125, 130 (610 SE2d 529) (2005) ("A party cannot complain of a judgment, order, or ruling that his own conduct produced or aided in causing." (citation and punctuation omitted)). And here, Hall only ever tried, in various ways, to bring the wrongful-death action in Gwinnett County, dismiss the Thomas County case, and remove Hill as a party litigating on the children's behalf. The various rulings on appeal rejected those attempts, and we see no evidence here that Hall did anything to invite that defeat.

The Court of Appeals' conclusion also conflicts with two relevant statutes. First, the court's theory of forfeiture is inconsistent with OCGA § 29-3-22 (a) (6)'s grant of exclusive power to litigate on a minor's behalf. The Court of Appeals reasoned that declining to join the Thomas County case and seeking to dismiss it amounted to forfeiture because those actions were "contrary to exercising" a conservator's exclusive litigation power. Not so. As we

17

explained above, this "exclusive power" includes not only the affirmative power to bring, defend, and participate in litigation on the minor's behalf, but also the power to *exclude others* from doing those things. Thus, a conservator who declines to join litigation brought by another on the minor's behalf and seeks to have that litigation dismissed is not acting "contrary to" exercising his exclusive power: he is trying to exercise it.

Take this case. Hall, the children's conservator, apparently wanted to bring the wrongful-death case on their behalf in Gwinnett County, and not in Thomas County. By the time he was appointed, it was too late to prevent such a case from being brought in Thomas County because Hill's case was already pending there. But it was still well within Hall's authority under OCGA § 29-3-22 (a) (6) to exclude others, including Hill, from "participat[ing]" in that case on the children's behalf, and to seek to end that litigation (in favor of pursuing the Gwinnett County litigation or otherwise). And that is exactly what he tried to do. Putting aside whether Hall made the appropriate procedural choices for achieving his litigation goals

(more on that below), these very actions, which the Court of Appeals cited to show that he forfeited his exclusive power, were plainly attempts to exercise that power. Speaking generally, we reject the notion that a conservator can forfeit the exclusive power to litigate on a minor's behalf by trying to exercise that power.

The Court of Appeals' conclusion also conflicts with the involuntary-joinder provision of OCGA § 9-11-19 (a). That statute expressly contemplates joinder of a person who has "refuse[d]" to participate in a case. OCGA § 9-11-19 (a) ("If [a person] should join as a plaintiff but refuses to do so, he may be made a defendant or, in a proper case, an involuntary plaintiff."). And when that person is joined despite that refusal, he is made a "party," with all the attendant rights and obligations, so the interests of parties and nonparties can be protected. See id. (requiring a person who meets statutory criteria to be "joined as a *party* in the action" and, "if he has not been so joined," requires the court to "order that he be made a *party*" (emphasis added)). See also, e.g., *Nashville Restaurant Mgmt., LLC v. Gwinnett County*, 288 Ga. 664, 665 (706 SE2d 451)

19

(2011) (holding that the trial court erred by entering an order on the same day that the appellant was joined as a party under OCGA § 9-11-19 (a), because the "appellant did not receive notice and have an opportunity for a hearing where it, *as a party to the proceedings*, could have voiced its objections" (emphasis added)). Yet under the Court of Appeals' reasoning, a conservator who is joined as a party after refusing to use a "traditional mechanism[ ]" for joining voluntarily has nonetheless forfeited his right to participate in the case.[7] This would render OCGA § 9-11-19 (a) ineffective in every such case.[8] This result, too, requires us to reject the Court of Appeals'

---

[7] We note that the Court of Appeals' list of "traditional mechanisms" non-parties use to join a pending case—intervention, interpleader, and substitution—is incomplete. *Hall*, 360 Ga. App. at 639. In addition to joinder under OCGA § 9-11-19, other procedures for participating in a pending case include permissive joinder, see OCGA § 9-11-20 (a), and class actions, see OCGA § 9-11-23 (a).

[8] Although we do not address here whether the trial court properly joined Hall as an involuntary plaintiff under OCGA § 9-11-19 (a), we note that a conservator may often be a necessary party in litigation involving minors when one has been appointed. Conservators hold not only the exclusive power to litigate on a minor's behalf, OCGA § 29-3-22 (a) (6), but also the exclusive power to "[r]eceive, collect, and hold the minor's property," OCGA § 29-3-22 (a) (4), and to settle claims on the minor's behalf, OCGA § 29-3-3 (b) ("If the minor has a conservator, the only person who can compromise a minor's claim is the conservator.").

forfeiture holding.[9]

For these reasons, we hold that a conservator who declines to join preexisting litigation voluntarily and seeks to have that litigation dismissed does not thereby forfeit his exclusive power to participate in that litigation after he is joined as a party under OCGA § 9-11-19 (a).

In so holding, we do not resolve a separate procedural question lurking in this case: if, as here, a case is brought on a minor's behalf before a conservator is appointed, what procedural steps, if any, must the new conservator take to exercise his exclusive power to participate in it on the minor's behalf? Much of the parties' briefing addresses that question, and in particular, whether a conservator must first become a party to the case if he wants to exercise that

---

[9] Hill defends the Thomas County court's actions—in particular, consolidating the Gwinnett County case—as consistent with OCGA § 9-2-5, which deals with abatement of duplicate lawsuits. But this and similar arguments about whether that court and the other trial courts here properly dealt with the flurry of filings and multiple lawsuits as a matter of procedure do not bear on the separate question of whether Hall forfeited his power as conservator to make litigation decisions on behalf of the minor children. Because we asked only that latter question in this case, we decline to address Hill's abatement argument.

exclusive litigation power. But in granting certiorari, we did not ask this question, and it is not presented here because Hall was made a party when the trial court joined him as party under OCGA § 9-11-19 (a).[10]

4. Our holding requires that we reverse the Court of Appeals' holding in Division 1 (a) of its opinion. We also vacate the portion of Division 4 affirming the Thomas County Superior Court's order striking Hall's voluntary dismissal of the consolidated Gwinnett County State Court claims. That conclusion should be considered anew in light of our holding that Hall did not forfeit his exclusive power to participate in that litigation as conservator on behalf of the

---

[10] We note as a general matter that an argument that the appointment of a conservator precludes another party from continuing to sue on a minor's behalf would be an argument that the other party lacks capacity or authority to bring or defend the action in a representative capacity. See *Equitable Life Assur. Soc. of U.S. v. Tinsley Mill Village*, 249 Ga. 769, 772 (294 SE2d 495) (1982) (describing condominium association's authority to sue on behalf of its members as "capacity to sue"); OCGA § 9-11-17 (b) ("The capacity of an individual, including one acting in a representative capacity, to bring or defend an action shall be determined by the law of this state."). Under the Civil Practice Act, "[w]hen a party desires to raise an issue as to . . . the capacity of any party to bring or defend an action, or the authority of a party to bring or defend an action in a representative capacity," the party must raise it "by specific negative averment." OCGA § 9-11-9 (a).

22

minor children after he was joined as a party. And we vacate Division 5 of the court's opinion because the holding in that division was based on the court's forfeiture holding in Division 1 (a). We express no opinion about the balance of the Court of Appeals opinion. We remand the case to the Court of Appeals for further proceedings consistent with this opinion.

*Judgment reversed in part and vacated in part, and case remanded with direction. All the Justices concur.*

Decided August 23, 2022.

Certiorari to the Court of Appeals of Georgia — 360 Ga. App. 635.

*Speckhals Law, Trent B. Speckhals; Charles M. Cork III*, for appellant.

*Young Thagard Hoffman Smith & Lawrence, John H. Smith, Jr., William J. Purvis; William U. Norwood III; YES Law Group, Yehuda Smolar; Beasley Allen Crow Methvin Portis & Miles,*

*Thomas P. Willingham, Mary L. Miller; Nelson Mullins Riley & Scarborough, Richard K. Hines V; Alexander & Vann, Raleigh W. Rollins*, for appellees.

*Roy M. Sobelson; Morgan & Disalvo, Allison L. Byrd; Melinda C. Pillow; McCurdy & Candler, Brian M. Deutsch; Baumbusch Law, Millie Baumbusch; Cohen Pollock Merlin Turner, Kevin T. O'Sullivan; The Pollan Law Firm, David P. Pollan; Robinson & Blazer, Mark A. C. Robinson; Siedentopf Law, Sarah E. Siedentopf; Spencer Law, Deana M. Spencer; Pacer Law, Linda S. Pacer; Ruthann P. Lacey; Hamida Jackson-Little; Weinberg Elder Law, Diane B. Weinberg*, amici curiae.