**FIRST DIVISION
BARNES, P. J.,
LAND and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**September 15, 2023**

# In the Court of Appeals of Georgia

A23A1581. IN RE ESTATE OF T. M. N., a child.

BARNES, Presiding Judge.

Quanda Jessie, the mother and conservator of the minor child T. M. N., appeals from the September 19, 2022 order entered by the Probate Court of Richmond County in which the court declined to approve in part the 2020 updated asset management plan for the conservatorship estate.[1] In the asset management plan, Jessie in her capacity as conservator included a budget for using the anticipated monthly income earned by the estate to pay for T. M. N.'s estimated monthly expenses over the

---

[1] This is the second appearance of this case before this Court. In the first appeal, among other things, we vacated the probate court's prior order entered on October 30, 2020 that addressed the 2020 updated asset management plan and remanded with direction that the court supplement its order with findings of fact and conclusions of law. See *In re Estate of T. M. N.*, 364 Ga. App. 267, 269 (2) (874 SE2d 462) (2022). On remand, the probate court conducted a hearing and entered its September 19, 2022 order, which includes findings of fact and conclusions of law.

ensuing year; the budget reflected that Jessie did not intend to encroach upon the corpus of the estate to pay for any of the estimated expenses. However, in its order at the center of this appeal, the probate court issued a blanket prohibition on Jessie disbursing any of the anticipated monthly income of the estate because, the court ruled, Jessie had a statutory obligation as a parent to support T. M. N. financially and had not proven that she would be unable to pay all of the child's estimated expenses herself. Because the probate court's order is inconsistent with the exclusive, automatic power granted to a conservator under OCGA § 29-3-22 (a) (1) to make reasonable disbursements from the annual income of the child ward's estate without court approval, we reverse.[2]

The record reflects that Jessie is the mother and sole surviving natural guardian of T. M. N., who is currently 16 years old. Since 2016, Jessie also has served as the conservator of T. M. N. The conservatorship was created because T. M. N. received

---

[2] We invited amicus curiae briefs from the Council of Probate Court Judges of Georgia and others interested in the questions raised in this appeal. The Council filed an amicus curiae brief. Mary F. Radford, Professor Emerita of Law at the Georgia State University College of Law, joined by ten trust and estate attorneys (T. Kyle King, Millie Baumbusch, Christina Cason Bishop, Allison L. Byrd, Brian M. Deutsch, Nikola R. Djuric, Elizabeth A. Faist, Kevin T. O'Sullivan, Mark A. C. Robinson, and Patricia M. Thompson) also filed an amicus curiae brief. We thank these amici curiae for their briefs filed in this matter.

a share of the proceeds from the settlement of an action for his late father's wrongful death due to medical malpractice. The conservatorship estate is primarily funded with those proceeds.

When appointed conservator in 2016, Jessie gave a conservator's bond as required by OCGA § 29-5-40 (a), and she filed an inventory of T. M. N.'s property and a plan for managing, expending, and distributing the property in accordance with OCGA § 29-3-30 (a). Each subsequent year, Jessie filed a verified return, an updated inventory, and an updated asset management plan for the conservatorship estate, among other filings. See OCGA §§ 29-3-30 (a), (c); 29-3-60 (a). A verified return "consist[s] of a statement of the receipts and expenditures of the conservatorship during the year preceding the anniversary date of qualification" of the conservator. OCGA § 29-3-60 (a). An updated inventory "consist[s] of a statement of the assets and liabilities of the estate as of the anniversary date of qualification." Id. An updated asset management plan consists of an "updated plan for managing, expending, and distributing the minor's property," id., and it must include "projections for expenses and resources and any proposals to change the title of any of the assets in the conservatorship estate." OCGA § 29-3-30 (c).

In 2020, Jessie filed an updated inventory and asset management plan that listed the current value of the assets of T. M. N.'s estate as $1,094,491.41. Jessie estimated that the average monthly income of the estate for the ensuing year would be $2,924.54, comprised of monthly interest income generated by the assets of the estate totaling $2,139.54 and monthly dependent Social Security benefits received by T. M. N. totaling $785. In her budget included in the plan, Jessie listed the anticipated monthly expenses for the upcoming year for the care, support, health, and education of T. M. N. as $3,095, broken down into different categories of expenses, and she indicated that she planned "to expend the interest earned on the minor's estate," his Social Security benefits, and monthly support provided by her towards paying those expenses. The budget did not include any anticipated encroachments upon the corpus of the estate.

Following a hearing on remand,[3] the probate court entered its order disapproving of the 2020 asset management plan to the extent that Jessie's budget reflected her intent to use the estimated monthly interest income generated by the

---

[3] See supra footnote 1.

estate towards paying T. M. N.'s anticipated monthly expenses.[4] In support of its decision, the probate court reasoned that parents have a statutory obligation to provide financial support to their minor children, see OCGA § 19-7-2,[5] and that Jessie therefore had an independent obligation to support T. M. N. financially. In light of that obligation, the probate court required Jessie to prove that she would be unable to pay all of T. M. N.'s estimated monthly expenses herself before the court would allow her to make any disbursements from the monthly income of the estate, and the court ruled that she was prohibited from spending any of the anticipated monthly income because she had not made such a showing. It is from this ruling that Jessie now appeals.

---

[4] The probate court approved Jessie's disbursement of T. M. N.'s monthly Social Security benefits for payment of his estimated monthly expenses. That ruling is not challenged on appeal.

[5] OCGA § 19-7-2 provides:
> It is the joint and several duty of each parent to provide for the maintenance, protection, and education of his or her child until the child reaches the age of majority, dies, marries, or becomes emancipated, whichever first occurs, except as otherwise authorized and ordered pursuant to subsection (e) of Code Section 19-6-15 [addressing child support] and except to the extent that the duty of the parents is otherwise or further defined by court order.

1. Jessie contends that the probate court abused its discretion by issuing a blanket prohibition on her disbursement of any of the anticipated monthly income from the estate until she first proved that she would be unable to pay all of T. M. N.'s estimated monthly expenses herself. According to Jessie, the probate court's decision is inconsistent with the exclusive power granted to conservators of child wards under OCGA § 29-3-22 (a) (1) to make reasonable disbursements from the annual income of the conservatorship estate to pay for the child's expenses without court pre-approval. We agree with Jessie.

> In interpreting Georgia statutes,

> we apply the fundamental rules of statutory construction that require us to construe the statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage. We must also seek to effectuate the intent of the Georgia legislature. OCGA § 1-3-1 (a). In this regard, in construing language in any one part of a statute, a court should consider the entire scheme of the statute and attempt to gather the legislative intent from the statute as a whole.

(Citation and punctuation omitted.) *In re Estate of Gladstone*, 303 Ga. 547, 549 (814 SE2d 1) (2018). Furthermore, "a statute must be construed in relation to other statutes of which it is a part," and statutes covering the same subject matter should be

6

"harmonized whenever possible." (Citation and punctuation omitted.) *Iglesia Del Dios Vivo Columna Y Apoyo De La Verdad La Luz Del Mundo, Inc. v. Downing*, 321 Ga. App. 778, 783 (1) (742 SE2d 742) (2013). Guided by these interpretive principles, we turn to the statutory framework at issue in this case.

Chapter 3 of Title 29 of the Official Code of Georgia Annotated governs conservators of minors. See OCGA § 29-3-1 et seq. ("Child Conservatorship Act"). "A conservator of a minor is a person appointed by a court to 'receive, collect, and make decisions' about the minor's property." *Hall v. Davis Lawn Care Svc.*, 314 Ga. 488, 493 (2) (877 SE2d 593) (2022), quoting OCGA § 29-3-21 (a). OCGA § 29-3-22 of the Child Conservatorship Act sets out powers that are granted to conservators of minors, some of which are granted to conservators automatically upon their appointment, see OCGA § 29-3-22 (a), and others of which must be specifically requested by conservators and are granted only by court order, see OCGA § 29-3-22 (b), (c). With respect to automatic powers, OCGA § 29-3-22 (a) provides that "*[w]ithout court order*, the appointment of a conservator shall vest in the conservator [certain] exclusive power[s]" and then lists those powers. (Emphasis supplied.) Construing OCGA § 29-3-22 (a), our Supreme Court has held that the powers granted to a conservator under this subsection are "exclusive" in that they may be exercised

7

only by the conservator and are "automatic[ ]" in that the "appointment itself gives the conservator the immediate authority to exercise [the] exclusive power." *Hall*, 314 Ga. at 493-494 (2). In contrast, OCGA § 29-3-22 (b) and (c) address certain powers that are granted to a conservator only by express court order, either on a "continuing" basis (subsection (b)) or a "case-by-case" basis (subsection (c)).

We turn now to the specific statutory provisions at issue in this case pertaining to a conservator's power to disburse income generated by the assets of a child ward's estate. Among the automatic powers granted to conservators is the power to "[m]ake reasonable disbursements from the annual income . . . for the support, care, education, health, and welfare of the minor[.]" OCGA § 29-3-22 (a) (1).[6] In contrast, OCGA § 29-3-22 (c) (1) provides that a conservator can "make disbursements that exceed by no more than a specific amount the annual income" only by court order on a "case-by-

---

[6] OCGA § 29-3-22 (a) (1) provides:
> Without court order, the appointment of a conservator shall vest in the conservator the exclusive power to[ ] . . . [m]ake reasonable disbursements from the annual income or, if applicable, from the annual budget amount that has been approved by the court pursuant to Code Section 29-3-30 for the support, care, education, health, and welfare of the minor[.]

Annual budgets under OCGA § 29-3-30 are discussed infra.

8

case basis."[7] Based on the plain language of these subsections and the *Hall* decision, we conclude that upon appointment, a conservator has the immediate, exclusive authority to make reasonable disbursements from the annual income generated by the child's estate to pay for the child's support, care, education, health, and welfare without court pre-approval; court approval is required only if the conservator intends to make disbursements that exceed the annual income (i.e., disbursements that will encroach upon the corpus of the estate).

OCGA § 29-3-30, which addresses asset management plans that must be submitted by conservators of child wards, supports our conclusion that a conservator is entitled to make reasonable disbursements from the annual income of the estate to support the child ward without court pre-approval. As previously noted, an asset management plan sets out the conservator's "plan for managing, expending, and

---

[7] OCGA § 29-3-22 (c) (1) provides:
> After appointment of a guardian ad litem for the minor and such hearing as the court deems appropriate, in granting the petition for appointment of conservator or at any time during the conservatorship, the court may grant the conservator any of the following powers on a case-by-case basis: . . . To make disbursements that exceed by no more than a specific amount the annual income or, if applicable, the annual budget amount which has been approved by the court pursuant to Code Section 29-3-30 for the support, care, education, health, and welfare of the minor[.]

distributing the property" of the child ward, and an updated plan must be submitted

annually to the probate court. See OCGA § 29-3-30 (a), (c).[8] The updated plan must

include "projections for expenses and resources," and "[t]he plan and *any proposed*

*budget for the expenditure of funds in excess of the anticipated income from the*

*property* must be approved by the court." (Emphasis supplied.) OCGA § 29-3-30 (c).

As reflected by the plain language of OCGA § 29-3-30 (c), only a budget submitted

---

[8] OCGA § 29-3-30 provides in relevant part:
　　(a) Within two months of appointment, the conservator shall file with the court and provide to the minor's guardian, if any, an inventory of the minor's property and a plan for managing, expending, and distributing the property.

. . .

　　(c) The plan for managing, expending, and distributing the minor's property must be based on the actual needs of the minor and take into consideration the best interest of the minor. The conservator shall include in the plan projections for expenses and resources and any proposals to change the title of any of the assets in the conservatorship estate. The plan and any proposed budget for the expenditure of funds in excess of the anticipated income from the property must be approved by the court. With each annual return filed thereafter, the conservator shall file with the court and provide to the guardian, if any, an updated plan pursuant to the provisions of this subsection.

10

as part of an updated asset management plan that proposes disbursing funds in excess of the income generated by the estate is subject to the probate court's pre-approval.[9]

Applying this statutory framework to the present case, we conclude that the probate court abused its discretion by issuing a blanket prohibition on Jessie disbursing any of the income generated by the estate in response to her proposed budget. It is undisputed that under the budget submitted as part of the 2020 asset management plan, Jessie indicated that she planned to spend only the projected income generated by the estate to pay for T. M. N.'s expenses and did not plan to encroach upon the estate's assets. And based on the plain language of the aforementioned statutes, Jessie had the exclusive, immediate authority to make reasonable disbursements from the income to pay for T. M. N.'s support, care, education, health, and welfare without court pre-approval, and any proposed budget to that effect likewise was not subject to the approval of the court. See OCGA §§ 29-

---

[9] Once a budget seeking the expenditure of funds in excess of the anticipated income is approved by the probate court, a conservator then can make reasonable disbursements from the approved "annual budget amount" without further court order. See OCGA § 29-3-22 (a) (1), quoted supra in footnote 6. However, if the conservator later wishes to disburse from the estate an amount that exceeds the approved "annual budget amount," the conservator must seek approval from the probate court. See OCGA § 29-3-22 (c) (1), quoted supra in footnote 7.

3-22 (a) (1); 29-3-30 (c). Nevertheless, the probate court, which did not question in its order the reasonableness of the projections of the estate's income and the child's expenses set out in Jessie's budget, preemptively restricted Jessie from disbursing any of the anticipated income until she first proved to the court that she could not pay all of the estimated expenses herself in her capacity as T. M. N.'s mother. In other words, the probate court placed the burden on Jessie first to justify to the court's satisfaction her proposed spending of the income before she could make any disbursements. By requiring such pre-approval, the probate court acted inconsistently with OCGA § 29-3-22 (a) (1) and OCGA § 29-3-30 (c) and instead erroneously treated Jessie's proposed disbursements as if they fell within the ambit of OCGA § 29-3-22 (c) (1), which pertains only to disbursements that would exceed the estate's annual income. Accordingly, the probate court abused its discretion.[10] See generally *Beyond Meat v.*

---

[10] Nothing in our ruling precludes a probate court from reviewing a conservator's disbursements of income after they are made as part of the court's review of a conservator's annual verified return, which must detail "the receipts and expenditures of the conservatorship during the year preceding the anniversary date of [the conservator's] qualification." OCGA § 29-3-60 (a). Upon the filing of the annual verified return,

> [t]he court shall carefully examine [the] return of [the] conservator and, upon petition of any interested person or upon the court's own motion, may require the conservator to produce the original documents that support the return. Except as otherwise provided in this subsection, if no objection is filed within 30 days of the time the conservator's return is

12

*Don Lee Farms*, 358 Ga. App. 77, 80 (1) (853 SE2d 667) (2021) ("[A] trial court abuses its discretion when its ruling . . . misapplies the relevant law.") (citation and punctuation omitted).

In so ruling, we recognize that a parent has a statutory obligation under Georgia law to provide for the maintenance, protection, and education of his or her minor child. See OCGA §§ 19-6-15; 19-7-2; *Kendrick v. Childers*, 267 Ga. 98, 99 (3) (475 SE2d 604) (1996) ("[T]he public policy of this state, as expressed in OCGA §§ 19-6-15 and 19-7-2, is to require parents to provide adequate support for their minor children."). But the automatic authority granted to conservators of child wards under OCGA § 29-3-22 (a) (1) to make reasonable disbursements of the estate's annual income for the support, care, education, health, and welfare of the child without first seeking court approval does not include any exceptions for situations where the

filed, the court shall record the return within 60 days of its filing. The return shall be kept on file in the court. The recorded return shall be prima-facie evidence of its correctness. *If there is an objection to the return or if the court on its own motion determines that the conservator may have wasted the property of the minor or failed in any manner to comply with applicable law, the court shall hold a hearing or take such other action as the court deems appropriate.*

(Emphasis supplied.) OCGA § 29-3-60 (c). The probate court also may conduct an investigation and require an accounting "[u]pon the petition of any interested person or whenever it appears to the court that good cause may exist to revoke or suspend the letters of conservatorship or to impose sanctions." OCGA § 29-3-82 (a).

13

conservator also is the parent of the child, and we "cannot add language to a statute by judicial decree."[11] (Citation and punctuation omitted.) *Moosa Co. v. Dept. of Revenue*, 353 Ga. App. 429, 432 (838 SE2d 108) (2020). See *Edwards v. Roundtree*, 365 Ga. App. 812, 818 (2) (880 SE2d 298) (2022) ("[C]ourts may not constrict a subsection of a statute by engrafting upon it limitations the legislature has not enacted.") (citation and punctuation omitted). See generally *Deal v. Coleman*, 294 Ga. 170, 173 (1) (a) (751 SE2d 337) (2013) ("[I]f the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end.") (citation and punctuation omitted).

---

[11] Decisions of this Court cited in the briefing in this case that have addressed the interplay between a parent's obligation to support his or her child and disbursements from a child ward's estate were decided before Georgia comprehensively reorganized and rewrote Title 29 of the Official Code of Georgia Annotated, effective July 1, 2005, and involved depletion of the corpus of the estate rather than disbursements of the estate's income. See *Hayes v. Clark*, 242 Ga. App. 411, 412-414 (2) (530 SE2d 38) (2000); *Whitehurst v. Singletary*, 77 Ga. App. 811, 816-817 (3), (4) (50 SE2d 80) (1948); *Pettigrew v. Williams*, 65 Ga. App. 576, 583-590 (16 SE2d 120) (1941). See Ga. L. 2004, p. 161, § 1. See generally *Zinkhan v. Bruce*, 305 Ga. App. 510, 515 (2) (699 SE2d 833) (2010) (noting revisions to Title 29 made effective July 1, 2005); Mary F. Radford, Georgia Guardianship and Conservatorship § 1:2 (Sept. 2023 update) (discussing history of revisions to Georgia's guardianship and conservatorship laws, including the revised code made effective in 2005 that was a "reorganization, modernization, and clarification of the Georgia laws that relate to the guardianship of the person and property of minors and adults"). Hence, those decisions do not speak to the issues raised in this case pertaining to OCGA § 29-3-22 (a) (1).

In prohibiting Jessie from disbursing any of the estate's anticipated monthly income, the probate court relied on *In re Estate of Jenkins*, 358 Ga. App. 254 (855 SE2d 6) (2021), but that decision does not control the outcome here. In *Jenkins*, we addressed Chapter 5, Title 29 of the Official Code of Georgia Annotated, which pertains to conservators of adult wards, and in particular, we analyzed the statutory subsection within that chapter governing a conservator's reasonable disbursements of the annual income from the estate of an adult ward, OCGA § 29-5-23 (a) (1). See *Jenkins*, 358 Ga. App. at 257-259 (2). We concluded that "[t]he default position under OCGA § 29-5-23 (a) (1) is for the conservator, rather than the probate court, to make decisions regarding how to disburse the ward's annual income," id. at 258 (2), but that "there may be instances in which it is appropriate for a probate court to limit a conservator's disbursements, even though they are within the ward's annual income." Id. at 259 (2). In the present case, however, the probate court did not simply limit Jessie's disbursements of income; rather, the court issued a blanket prohibition on any income disbursements and thus eliminated the authority of Jessie in her role as conservator to make any income disbursement decisions over the ensuing year without court pre-approval. The probate court's reliance on *Jenkins* thus was misplaced.

15

*Jenkins* is inapposite for an additional reason. Notably, the language of OCGA § 29-5-23 (a) (1) pertaining to adult wards that was addressed in *Jenkins* is different from the language of OCGA § 29-3-22 (a) (1) pertaining to child wards. Unlike the latter statute, OCGA § 29-5-23 (a) (1) provides:

> *Unless inconsistent with the terms of any court order relating to the conservatorship*, a conservator without court order may[ ] . . . [m]ake reasonable disbursements from the annual income or, if applicable, from the annual budget amount that has been approved by the court pursuant to Code Section 29-5-30 for the support, care, education, health, and welfare of the ward and those persons who are entitled to be supported by the ward[.]

(Emphasis supplied.) As the emphasized plain language reflects, "OCGA § 29-5-23 [(a) (1)] . . . permits a probate court to enter orders inconsistent with the authority otherwise given to a conservator" to disburse the income of the adult ward's estate. *Jenkins*, 358 Ga. App. at 258 (2). Because OCGA § 29-5-23 (a) (1) and § 29-3-22 (a) (1) were both enacted as part of the same act revising Title 29 of the Official Code of Georgia Annotated[12] and both address income disbursements by conservators, the two statutes should be read in pari materia with one another and their provisions

---

[12] See Ga. L. 2004, p. 161, § 1.

16

harmonized. See *Downing*, 321 Ga. App. at 783 (1). Accordingly, we must presume that if the General Assembly had wished to permit a probate court to enter orders inconsistent with the authority given to conservators of child wards to disburse income under OCGA § 29-3-22 (a) (1) without court approval, the legislature would have done so expressly, as it did in OCGA § 29-5-23 (a) (1). See *Kemp v. Kemp*, 337 Ga. App. 627, 636 (788 SE2d 517) (2016). "As a result, we must also presume that the General Assembly's failure to do so [in OCGA § 29-3-22 (a) (1)] was a matter of considered choice." (Citation and punctuation omitted.) Id. See *Transp. Ins. Co. v. El Chico Restaurants*, 271 Ga. 774, 776 (524 SE2d 486) (1999) ("We must presume that the Legislature's failure to include the limiting language was a matter of considered choice.").[13]

For all of the foregoing reasons, we conclude that the trial court erred by restricting Jessie from disbursing any of the anticipated income from the estate to pay

---

[13] We note that OCGA § 29-3-21 (a) of the Child Conservatorship Act provides in part that "[a] conservator shall receive, collect, and make decisions regarding the minor's property, except as otherwise provided by law or by the court." We do not read the final clause of this general provision as controlling over the more specific provision governing conservator's decisions over income disbursement, OCGA § 29-3-22 (a) (1). As we have repeatedly explained, "for purposes of statutory interpretation, a specific statute will prevail over a general statute, absent any indication of a contrary legislative intent in the relevant statutory text." (Citations and punctuation omitted.) *Moosa Co.*, 353 Ga. App. at 432.

for T. M. N.'s estimated expenses over the ensuing year on the ground that Jessie had not first proven to the court that she would be unable to pay the expenses herself. Accordingly, we reverse the probate court's September 19, 2022 order to the extent that it imposed such a restriction.

2. In light of our decision in Division 1, we need not address Jessie's remaining enumerations of error.

*Judgment reversed. Land and Watkins, JJ., concur.*